Ollie T. HILL, John W. Ward, Charles R. Merriwether, Jr., Edward A. Minatee, Minnie Marble, Mary E. Carter, Individually and on behalf of all other persons similarly situated, and Betty Bailey, Victor L. Furr, III, Darlene Johnson, Appellants,

v.

AT & T TECHNOLOGIES, INC., Appellee.

No. 82–2155.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 9, 1983.

Decided March 27, 1984.

Rehearing and Rehearing En Banc Denied May 3, 1984.

Eric Summergrad, Washington, D.C. (Jeffrey A. Burt, Arnold & Porter, Geof-

frey Judd Vitt, Caplin & Drysdale, Washington, D.C., Lawyers Committee for Civil Rights under Law on brief), for appellants.

Zachary D. Fasman, Washington, D.C. (Thomas P. Gies, Washington, D.C., Joe Ramirez, Basking Ridge, N.J., Lawrence M. Joseph, New York City, Crowell & Moring, Washington, D.C., on brief), for appellee.

Before RUSSELL and MURNAGHAN, Circuit Judges, and JAMES H. MICHAEL, Jr., United States District Judge for the Western District of Virginia, sitting by designation.

DONALD RUSSELL, Circuit Judge:

This suit pending since May 1975 has been three times before the district court and twice already before us.[1] It is now before us, nine years after it was begun, for the third and hopefully last time. In outlining the steps in this protracted proceeding, we shall not repeat the earlier history of the proceedings as set forth in our former decisions save as such review may be necessary for an understanding on the issues in this appeal.

This action involved a charge of an "across-the-board" pattern of discrimination in hiring, job assignments, and promotions at the defendant's Arlington, Virginia, facility. The plaintiffs were three employees at the defendant's Arlington facility. The district court, on plaintiffs' motion, certified the action as a class action with the plaintiffs as class representatives of all persons discriminated against in hiring, job assignments and promotions at defendant's Arlington facility. After considerable discovery, the action proceeded to trial in February 1976 resulting in a judgment generally in favor of the plaintiffs. On appeal we reversed. We found the class certification for discrimination in hiring improper because of the absence of a

qualified class representative and dismissed the claim of discrimination in promotion because of "a failure to prove a *prima facie* case of discrimination in promotions." We concluded our decision by ruling that "on this record a finding of discrimination against blacks and females [was] warranted only in job assignments to Shop Trades and against females in job assignments in the warehouse in the Service Center" at the Arlington facility.[2] The plaintiff petitioned for certiorari but such petition was denied on October 29, 1979.

Three months after the first decision herein became final the appellants Betty Bailey, Victor L. Furr III, and Darlene Johnson petitioned to intervene, asserting the right to appear as the class representatives on behalf of "all blacks and all women who unsuccessfully sought employment with Defendant at Defendant's facility in Arlington, Virginia, or successor facilities at any time since July 2, 1965." The parties engaged in some discovery and filed a number of exhibits consisting largely of statistical tables. After a hearing on the record, which included the new material developed on discovery as well as the prior record in the suit, the district judge denied the motion to intervene. He assigned "two essential reasons" for his denial. These reasons, as summarized in our opinion reviewing the district court's order, were:

"First, the length of time that the case had continued from its filing in May 1975. On this the court observed that '[i]t's time this case got concluded.' Second, said the court, intervention would require a hearing on the hiring claims, and this would delay relief on the job assignment claims now upheld on the first appeal because 'its impractical if not impossible to be running part of the case here and part before the master on the job assignments claims.'"[3]

---

**1.** *Hill v. Western Elec. Co., Inc.,* 672 F.2d 381 (4th Cir.), *cert. denied,* 459 U.S. 981, 103 S.Ct. 318, 74 L.Ed.2d 294 (1982); *Hill v. Western Electric Co.,* 596 F.2d 99 (4th Cir.), *cert. denied,* 444 U.S. 929, 100 S.Ct. 271, 62 L.Ed.2d 186 (1979).

**2.** 596 F.2d at 107.

**3.** 672 F.2d at 385.

On appeal, we held that a real review of the grounds or "reasons" stated by the district judge for denying intervention could not be had absent an evaluation of "the appropriateness of reinstating [the District Court's] findings of fact and conclusions of law on the hiring claims if intervention were allowed." We found, however, that "[o]rderly consideration of ... [such appropriateness] should, we believe, follow a threshold consideration of the formal qualifications of the proposed intervenors." Since these qualifications "were not addressed by the district court in view of its decision not to permit intervention on other grounds," we remanded the cause to the district court with this directive:

> "These objections [i.e., 'the formal qualifications' of the proposed intervenors] should be addressed in the first instance by the trial court, as a preliminary to its reconsideration of the propriety of allowing intervention by any of the proposed intervenors found qualified as representatives. If a proposed intervenor is found not formally qualified to act as a class representative the intervention inquiry as to that person obviously need proceed no further.

> "If the district court finds any of the proposed intervenors formally qualified to represent the class, it should then reconsider the motion for intervention in light of our discussion of the appropriate standards and factors applicable in this case."[4]

The district court, obedient to that direction, proceeded to have a hearing on the issues remanded to it. After reviewing the evidence in the record it concluded that the petitioners had failed to establish their qualifications to maintain a suit as class representatives and it ordered the action dismissed.

In reaching his conclusion, the district judge recognized that there was a factual difference between the situation of the petitioner Bailey and the other two petitioners. He, therefore, addressed separately the claims of Bailey and those of Furr and Johnson. The district judge first addressed the qualifications of the petitioner Bailey to act as a class representative on behalf of blacks and females claiming discrimination in hiring. He held that "in order to be a class representative, you have to have been able to file a suit on your own." He found as a fact that the last denial of employment or act of hiring discrimination suffered by this petitioner individually occurred in May 1973, and that the petitioner had not filed a charge of discrimination with the EEOC within 180 days after such alleged violation. Clearly, the effect of this failure to file within the required statutory time under 42 U.S.C. § 2000e–5(e) of the Act would normally have been fatal to petitioner's individual claim. *See United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977). In that case, the Supreme Court held that a violation which is not made the subject of an EEOC charge within 180 days after its commission is "the legal equivalent of a discriminatory act which occurred before the statute was passed" and is "merely an unfortunate

---

**4.** 672 F.2d at 389–90.

This case is commented on in Note, *Reinstating Vacated Findings in Employment Discrimination Class Actions: Reconciling General Telephone Co. v. Falcon with Hill v. Western Electric Co.,* 4 Duke L.J. 821 (1983).

*See, however, Vuyanich v. Republic National Bank of Dallas,* 723 F.2d 1195 (5th Cir.1984): "The district court allowed intervention by three female former employees who sought to intervene and assert claims of injury relating to promotion, transfer, compensation, job classification, and job assignment. Since these intervenors had not filed timely charges with the EEOC, they were required to 'proceed ... within the periphery of the issues which [the named plaintiffs] could assert.' *Oatis v. Crown Zellerbach Corp.,* 398 F.2d 496, 499 (5th Cir.1968). Thus, intervention cannot bootstrap the court's jurisdiction to encompass claims regarding practices broader than the hiring and termination claims properly assertable by the named plaintiffs.

....

"... Since Vuyanich and Johnson had standing to assert only sex discrimination in hiring or race discrimination in termination, *Oatis v. Crown Zellerbach Corp.* is determinative of the impropriety of allowing intervention."

event in history which has no present legal consequences."

The district court, however, went on to consider whether the petitioner could qualify as a class member by relying on the filing date of the original plaintiffs' charge of hiring discrimination under the rule stated in B. Schlei & P. Grossman, *Employment Discrimination Law*, 1262–63, (2d ed. 1983):[5]

"Only the named plaintiff need exhaust the EEOC administrative process prior to filing a Title VII class action; the absent class members need not satisfy the jurisdictional requirements of filing an EEOC charge or receipt of a right-to-sue letter. However, the class will generally be limited to claims of those employees which could have been asserted at the time of the named plaintiff's charge, i.e., on or after the 180th or 300th day prior to said charge."

The initial plaintiffs herein filed their first charge of hiring discrimination on August 8, 1974.[6] As the district court found, the petitioner's last violation occurred considerably more than 180 days before August 8[7] and thus was plainly tolled and rendered of no "legal consequences." The petitioner also had referred to two other complaints filed by Ellsworth Newman and Jacqueline Kohls in 1972 and 1973 with the EEOC and sought to base her contention that her claim was not barred on these filings. The district court, however, dismissed such contention, observing: "I don't think that the earlier '72 and '73 EEOC complaints can be sufficiently like or related to hiring, so that they can be said to have tolled Mrs. Bailey's 180 days."

The petitioner Bailey's claim had, therefore, been time-barred before either the original plaintiffs, or any other party, had filed a charge of discrimination in hiring with the EEOC. The district judge accordingly found that, however you considered it, the petitioner Bailey could qualify as a class representative neither on the basis of a charge filed by her with the EEOC within 180 days after the violation complained of by her nor by claiming the date when the original plaintiffs or any other party filed a charge of discrimination in hiring with the EEOC.

The other two petitioners, Furr and Johnson, on the other hand, had not applied for employment as installers either before the original plaintiffs filed a charge with the EEOC or before this action was begun. It was more than 4 years after this suit was filed that Furr and Johnson first sought work as installers with the defendant. When they did seek work, they did so at defendant's Landover, Maryland, facility and not at the Arlington facility. In considering the status of these petitioners, the district judge first discussed whether the Landover installation facility was the successor of the Arlington installation facility. He found specifically on this point that "the Landover, Maryland, facility is not the complete, functional successor to Arling-

---

5. There may be some question whether this rule would have any applicability to this case since we held in *Hill I* that the original plaintiffs never had standing to represent as class representatives claimants of discrimination in hiring. *See Vuyanich v. Republic National Bank of Dallas, supra*. We, however, find it unnecessary to decide such issue since it is manifest for the reasons set forth in the text that the rule, even if applicable under the unique facts here, would not support the petitioner's qualifications as a class representative.

6. The finding of the Court was:
    "As I read the EEOC complaints as originally filed and as amended by the original, named plaintiffs, the first EEOC complaint that mentioned hiring was on August 8, 1974."

7. The court said in this regard:
    "I would say that, while the [charge] was filed in May of 1974, that, if prior to the expiration of her 180 days an EEOC complaint alleging discrimination and hiring had been filed by her or by one of the original, named plaintiffs that her 180 days would have been tolled, because there wouldn't be any point in filing with the EEOC hundreds of firing [sic] complaints in order to keep the hiring claim alive for her and others.
    "But by the time the August 8 hiring complaint was filed, Mrs. Bailey had nothing left to be tolled, and, therefore, since she could not, through tolling or otherwise, have filed a suit, on May, 1975, she can't act, in my view, as a class representative."

ton," that, at most, the Landover facility was only "a functional successor in part to the hiring function that was formerly conducted in Arlington" and that, therefore, the Landover installation was not the successor of the Arlington function. The district judge next addressed the standard by which the court had been guided in arriving at its first decision in this case. In this decision, the district judge found that the Washington Standard Metropolitan Statistical Area (SMSA) which covered metropolitan Washington, including areas in Maryland, covered too large an area and did not "provide an accurate or reliable indication of persons who are available for work in a particular job with a particular employer" in the Arlington area. Because of this unreliability of the SMSA data, the district judge found (and this finding has never been questioned) that the proper measure for analyzing the defendant's work force at its Arlington facility in order to determine whether the defendant had engaged in racial discrimination was the applicant-flow data for that facility in the relevant time period. These findings were repeated in the district judge's ruling in the petitions under review here: "It was the applicant-flow data [at the Arlington] facility that formed the labor pool against which [the court], as a standard, ... measured the hiring practices [of the defendant] and found them ... wanting" in the first decision, and it was the "hiring that was done or not done in and before 1975 and '76" which was "compared against the applicant-flow data at the Arlington facility in determining [in the first decision] whether the plaintiff had made out a prima facie case." The district judge concluded that discrimination in hiring in the installation facility of the defendant at Landover in 1979 could not be determined on the basis of data gathered exclusively in connection with the Arlington facility in the years 1976 and preceding years and, therefore,

for that reason, the claims of the petitioners Furr and Johnson would require a separate trial and could not be resolved on the basis of the Arlington figures, which ended almost four years before either of the petitioners was denied employment. "For these reasons," the district judge found, "that neither Furr or [sic] Johnson are [sic] proper representatives [sic] of the class, and they will be stricken."

■ We do not understand that the petitioners in this appeal take issue with the district judge's finding of fact in his decision dismissing the petitions to intervene. To do so they would be required to show that such findings were clearly erroneous, *Pullman-Standard v. Swint,* 456 U.S. 273, 287, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982); Comment, *An Analysis of the Application of the Clearly Erroneous Standard of Rule 52(a) to Findings of Fact in Federal NonJury Cases,* 53 Miss.L.J. 473, 489–497 (1983), and they do not appear to have undertaken this burden. The attack on the district judge's decree is directed rather at the legal rules or reasoning he used for the result he reached in giving effect to such finding. We address, first, the challenge to the legal principles and reasoning applied by the district judge in connection with the claim of the petitioner Bailey.

■ The first objection of the petitioner to the district judge's conclusion is directed at the finding that the petitioner Bailey's claim was barred by failure to file such claim with the EEOC within 180 days of its occurrence. It is her contention that hers was a "continuing violation"[8] and that in such a situation the time requirements for the filing of a charge are inapplicable. Such an argument assumes that an allegation of a "continuing violation" constitutes a talismanic or shibboleth term automatically relieving a claimant of any obligation

---

**8.** A number of cases hold that the continuing violation theory is confined to promotion and assignment discrimination claims (i.e., confined to existing employees) and specifically does not apply to hiring or discharge discrimination claims. *See Williams v. Owens-Illinois, Inc.,* 665

F.2d 918, 924 (9th Cir.1982), *cert. denied,* 459 U.S. 971, 103 S.Ct. 302, 74 L.Ed.2d 283. However, it is unnecessary for us to consider this question since it is clear that the continuing violation theory is unavailable to the petitioner on other grounds.

to comply with the statutory time requirement for the filing of a charge with the EEOC under Title VII. Such a theory, if accepted, would, as we have said in *West v. ITT Continental Baking Co.*, 683 F.2d 845, 846 (4th Cir.1982), destroy the policies of finality and repose inherent in the filing requirement of Title VII. However, the "critical question" in every discrimination case, whether there is a charge of "continuing violation" or not, is "whether any present *violation* exists" and not "mere continuity," "present violation" being one occurring within 180 days of the filing of a charge on account of such violation with the EEOC. That was the language of the Supreme Court in *Evans* at 431 U.S. 558, 97 S.Ct. 1889 (Italics in text); it is the essence of § 2000e–5(e), 42 U.S.C. and the statutory policy of "finality and repose."

Actually, we had occasion recently to examine this continuing violation theory and we held that in order to apply this theory that there must be a "present violation" within the required time period. *Woodard v. Lehman*, 717 F.2d 909, 914–15 (4th Cir.1983). In that case we said: "It is *only* where an actual violation has occurred within that requisite time period [i.e., within the period of 180 days before the filing of a charge with the EEOC] that under any possible circumstances the theory of continuing violation is sustainable." (Italics in text)[9] Since there was no "actu-

al discrimination against [Bailey] that took place" within the 180-day required filing period, "the theory of a continuing violation is [not] sustainable" in favor of this petitioner.

The primary ground on which the petitioner bases her claim of error in the decision of the district judge, though, is not so much the continuing violation theory but that the requirement of filing with the EEOC within 180 days after a violation is not applicable in connection with petitions to intervene if there are filings of like EEOC charges of discrimination in hiring by others whether the parties filing the claim are plaintiffs in the pending action or not.[10] It is her position that "[a]ny requirement that Ms. Bailey file separate charges [with the EEOC] was tolled by the much earlier filing of other EEOC charges which raised claims of hiring discrimination at Western's Service Center." And she claims that such claims were filed with the EEOC "as early as January 21, 1971." We need not, however, delay to inquire whether this theory of the petitioner, if factually supported, is sound, since it appears from the record that there is no basis factually for the application of the theory.

The three individuals, who, according to the petitioner, had filed claims of discrimination in hiring before the petitioner's claim arose, were Leonard Williams, Jr.,[11]

---

**9.** *Id.* at 915.

*See also Bronze Shields, Inc. v. N.J. Dept. of Civil Serv.*, 667 F.2d 1074, 1084 (3d Cir.1981), *cert. denied*, 458 U.S. 1122, 102 S.Ct. 3510, 73 L.Ed.2d 1384, in which there was a charge of a continuing violation:

"The statute (42 U.S.C. § 2000e–5(e)) requires that 'the person aggrieved' file charges within 180 days of 'the alleged unlawful employment practice.' This statutory language indicates that some act must aggrieve the complaining party. The record does not show that the defendants acted in any way which aggrieved plaintiffs within the 180 days before plaintiffs filed their EEOC charge. The only act of which plaintiffs complain was the promulgation of the eligibility roster on May 3, 1975. Plaintiffs' EEOC charge was filed more than a year later, in June, 1976, far more than 180 days after the list's promulgation, and therefore was untimely."

**10.** In *Dalton v. Employment Security Comm. of N.C.*, 671 F.2d 835, 838 (4th Cir.1982), *cert. denied*, 459 U.S. 862, 103 S.Ct. 138, 74 L.Ed.2d 117, we held that such right of a party to rely on another party's filing is, in any case, dependent on the right asserted by both being "substantially identical".

**11.** Williams seems to have been a late discovery on the part of the petitioner because he was not disclosed at first as a claimant; the petitioner confined this contention to the charges filed by Newman and Kohls. This is the reason that in her petition Ms. Bailey referred only to charges filed "as early as January 21, 1971," a statement obviously referring only to the charges filed at that time by Newman and Kohls. It is equally plausible that petitioner did not cite Williams' claim because Williams abandoned it years before the petitioner ever sought employment at the defendant's facility.

Ellsworth Newman, and Jacqueline Kohls. Williams' claim which arose in 1966 represented a charge of discrimination in hiring in that same year. The EEOC, after an investigation, found no reasonable cause to credit his allegation but issued him a right-to-sue letter. He did not, however, file action within the required time frame and his claim became a mere "event in history," without any "legal consequences" years before the petitioner's claim arose. Newman's claim as filed with the EEOC on January 21, 1971, did not charge discrimination in hiring. Actually he was an employee and his charge was discriminatory treatment and harassment. It is true that he had appended a petition signed by others, all existing employees of the defendant, stating claims relating to three subjects: "1. Job Placement Discrimination; 2. Unwarranted Disciplinary Actions; and 3. Office Personnel Promotions." There is only one reference to hiring discrimination by these employees and that was in a subheading under "Office Personnel Promotions." This single reference was: "Hiring Discrimination for Summer Help." As we have said, none of these signers had been denied employment and their only complaint relating to hiring had to do not with some one like the petitioner Bailey who was seeking a permanent job but was restricted to persons other than the signers of the petition, who were seeking summer work (apparently a reference to employment of students during the summer). In any event, none of these parties—neither Newman nor the signers of the petition—had a complaint relating to hiring or had filed a charge involving hiring with the EEOC at any time. All had been employed by the defendant and lacked standing to represent persons *not hired* like the petitioner Bailey.

The actual charge filed by Jacqueline Kohls (Banister) is not in the appendix. There is, though a reference to her charge in a notice to the defendant sent by the EEOC. This form notice had an "x" marked opposite the term "Hiring." However, there is other evidence in the record that makes clear what Ms. Kohls' claim was. She had been employed by the defendant but had taken maternity leave. At the time the defendant had a policy that at the end of maternity leave the employee was given a job only if one was open at the time. Under this policy Ms. Kohls was denied employment when she reapplied. She, and a number of others similarly situated, received right-to-sue letters and began a class action attacking the maternity policy apparently as sex discrimination. That suit was settled and Ms. Kohls (who had in the meantime become Ms. Banister) received a settlement in the amount of $4,285 and executed a release.[12] Obviously, petitioner Bailey's claim is not similar to that of Ms. Kohls. If it had she would have been entitled to participate in the class action maintained by Ms. Kohls and two other plaintiffs.

The petitioner suggests another possible excuse for her failure to apply for employment after May 1973. She alleged in an affidavit attached to the petition to intervene and apparently prepared by petitioner's counsel (who was the counsel for the original plaintiffs) that she had not made any further applications for employment at the Arlington facility after May 1973, "since Western continues to discriminate against blacks and females." However, in her deposition later taken, she testified that she never came to believe that the defendant had discriminated against her until 1979: in fact, she said she "didn't think about it" until 1979.[13] What caused

12. The record herein shows that the class, described as "Maternity Leave Claimants—Schedule of Eligible Claimants," consisted of 28 persons.

13. Moreover, the petitioner had shortly after she failed to obtain employment at the defendant's Arlington facility obtained employment with the post office and has since been continuously employed at the post office. She is entirely satisfied with her employment at the post office and *testified* unequivocally that she would not accept employment by the defendant if offered such employment. Whether a person who does not actually seek employment and would not accept it if offered can qualify as class representative for persons seeking employment may be open

her to think then for the first time that she had been discriminated against was a talk with her sister in early 1979. It was at that time that she said she found out that she had been discriminated against by the defendant. The manner in which she belatedly learned six years after she was refused employment that she had sustained discrimination was that "[her sister's] lawyer had told her [the sister] and [the sister] had told me" that I had been discriminated against. And the reason this conversation between the sisters took place was candidly stated in the testimony of the petitioner: Her sister told her they (referring to the original plaintiffs and their attorneys apparently) needed someone as a party "that was not working for Western Electric" to appear as a plaintiff in the proceeding and she was thought to meet that requirement. In the light of this testimony of the petitioner, the district judge understandably gave no consideration to the manifestly specious reason asserted by the petitioner for not applying after May 1973.[14]

It follows that the petitioner Bailey has not raised any sound ground for disturbing the denial of her petition to intervene. She unquestionably did not have the formal qualifications to act as a class representative in this action. Any discrimination claim she had had expired 180 days after she applied for and was denied a job by the defendant in May 1973.

■ Turning to the claims of the petitioners Furr and Johnson: Neither of these petitioners ever applied for work at the Arlington facility; both applied, as we have observed in summarizing the district judge's opinion, at the defendant's Landover, Maryland, installation. Both applied five years after this suit was filed and four years after it was tried. The theory on which these petitioners base their right to appear as class representatives of all unsuccessful applicants for hiring as installers at Arlington is that the Landover in-

stallation facility is the successor of the Arlington installation facility. Such an argument assumes that the Arlington installation was shifted, in whole or in part, to Landover. The record is barren of any substantial evidence to support such an assumption. We have no statistics from 1976 to 1979 but we do have statistics for 1979 (the year in which both petitioners applied for employment) and 1980. There was active employment of installers at the two facilities. Employment as installers at both facilities was different both in applicant-flow and racial composition. Thus, in these years the applicant-flow (which was the test used for determining *prima facie* discrimination in the first decision) for employment as installers at Landover consisted of 314 applicants and at Arlington 225 applicants. The actual hirings in those two years as installers were 63 at Arlington and 78 at Landover. The volume of applicants and of hirees it is true was somewhat higher at Landover than at Arlington but the applicant-flow and the hirings at Arlington did not indicate that the installation operations at Arlington had been transferred to Landover. Moreover, there was a substantial difference in the proportion of blacks and females in the applicant-flow at the installation unit of the two facilities, making the comparison of the two facilities, employment-wise, inappropriate. Thus, there were almost twice as many black applicants at Landover than at Arlington (60.2% vs. 36.7%). The hiring rates at the two facilities were also substantially dissimilar. The percentage of black hirees as installers at Landover was 11.2% and at Arlington 18.3%.

The district judge found on this and other evidence both that the Landover installation facility was not the successor of the Arlington installation and that there was a substantial difference in the applicant-flow at the two facilities, which was the "meas-

---

to some doubt but we find it unnecessary to consider this issue since the petitioner's want of qualifications on other grounds is so clear.

14. We have no occasion to consider whether such a plea would have any validity under the facts of this case but *see* on the point, *Delaware State College v. Ricks*, 449 U.S. 250, 261, n. 15, 101 S.Ct. 498, 506, n. 15, 66 L.Ed.2d 431 (1980).

ure" used in the first decision in determining discrimination. Because of these factual findings, the court found that the petitioners Furr and Johnson did not qualify as proper class representatives of the applicants for employment as installers at the Arlington facility. This conclusion, based as it is on factual findings by the district court, is not clearly erroneous, and may not be disturbed.

For the reasons stated, the decision of the district court denying the petitions to intervene and dismissing the action is affirmed.

AFFIRMED.