**Leford T. DAVIS, et al.**

v.

**BETHLEHEM STEEL CORPORATION, et al.**

**Civ. A. No. M–82–3255.**

United States District Court, D. Maryland.

Jan. 3, 1985.

Luther C. West and West, Carey, Frame & Barnstein, Baltimore, Md., for plaintiffs.

Charles M. Kerr, Jeffrey P. Ayres, John H. Morris, Jr., and Venable, Baetjer & Howard, Baltimore, Md., for defendant Bethlehem Steel Corp.

Robert M. Weinberg, Jeremiah A. Collins, and Bredhoff & Kaiser, Washington, D.C., I. Duke Avnet and John H. Price, Baltimore, Md., for defendants United Steelworkers of America and its Locals 2609 and 2610.

## MEMORANDUM AND ORDER

JAMES R. MILLER, Jr., District Judge.

On November 9, 1982, four plaintiffs, Leford T. Davis, Leroy S. Aiken, William C. Bland, and Alfred T. Smith, filed a putative class action against Bethlehem Steel Corporation and United Steel Workers of America Local 2609 and Local 2610 alleging racial discrimination pursuant to 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981.

The defendants, Bethlehem Steel (Paper Nos. 17 & 22) and the unions (Paper No. 24), have filed motions to dismiss or for summary judgment and the plaintiffs have responded (Paper Nos. 21, 25, 27). No hearing is necessary to decide the issues herein. Local Rule 6(E).

### Procedural History

This case relates directly to *Lane v. Bethlehem Steel,* M–71–580, in which this court denied the named plaintiffs' motion to certify 15 classes, holding that the plaintiffs had not met their burden under Fed.R. Civ.P. 23(a) to show that a class or classes should be certified to litigate broad based, across the board, racial discrimination claims against Bethlehem Steel and the unions. *See Lane, et al. v. Bethlehem Steel, et al.,* No. M–71–580, slip op. at 5, 7 (D.Md. May 4, 1981) (Paper No. 17, Ex. E). After that ruling in *Lane,* the "parties informed the court of a tentative settlement resolving the claims of the named plaintiffs in *Lane* and the related cases."[1] *Lane v.*

---

1. Those related cases were *Skates, et al. v. Beth-* *lehem Steel, et al.,* M–76–1319; and *Christian, et*

*Bethlehem Steel,* 93 F.R.D. 611, 613 (D.Md. 1982). On "October 14, 1981 the court approved the proposed settlement ... [and] final judgment for the defendants and against the plaintiffs was entered by the Clerk on October 28, 1981." *Id.*

On November 25, 1981, the four plaintiffs herein filed a motion to intervene in *Lane* for the purpose of appealing the denial of class certification, *id.* at 614, and that motion was granted. *Id.* at 619.

While that appeal was pending, the four plaintiffs herein, in November, 1982, filed the instant action. Bethlehem Steel filed a motion to stay or to dismiss the newly filed action (Paper No. 7) as did the defendant unions (Paper No. 8). The plaintiffs opposed those motions (Paper Nos. 10 & 14). Before this court formally ruled on the motion to stay, the Fourth Circuit affirmed the denial of class certification in *Lane. Adams v. Bethlehem Steel,* 736 F.2d 992, 994–95 (4th Cir.1984).

The defendants argue that the instant action is barred by the statute of limitations. The plaintiffs have responded that their class based and individual claims are not time barred, relying to some extent on tolling principles which they argue are applicable because of the pendency of the *Lane* case and the subsequent appeal.

To the extent that this court will rely on matters and materials outside the pleadings, the defendants' motions will be treated as motions for summary judgment. Fed.R.Civ.P. 56.

*Legal Analysis*

A) Do the tolling principles of *American Pipe* protect the individual claims set forth by the four named plaintiffs herein?

■ The plaintiffs contend that because "less than 30 days following the settlement/dismissal of the *Lane, Christian* and *Skates* law suits, the named plaintiffs ... intervened to appeal the denial of class certification in *Lane* ... the original tolling

*al. v. Bethlehem Steel, et al.,* M–76–1560.

of the statute of limitations in the *Lane* case (as to both the 1981 and Title VII class aspects of that case) remain[ed] tolled until the Fourth Circuit rendered its decision on that appeal." (Paper No. 21 at 2).

In *American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), the Court held "that the commencement of a class action procedure suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." [2] *Id.* at 554, 94 S.Ct. at 766. The Court explained the fairness of such a tolling rule on the grounds that the defendants had been notified by the filing of the original class action "not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment. Within the period set by the statute of limitations, the defendants have the essential information necessary to determine both the subject matter and the size of the prospective litigation, whether the actual trial is conducted in the form of a class action, as a joint suit, or as a principal suit with intervenors." *Id.* at 555, 94 S.Ct. at 767. The Court noted in passing that if claims not raised in the class action complaint were later presented to a court and limitations sought to be tolled, the latter court could impose conditions on the intervenors pursuant to Fed.R.Civ.P. 23(d)(3). *Id.* at 555 n. 25, 94 S.Ct. at 767 n. 25.

The Court further clarified the *American Pipe* decision in *Crown, Cork & Seal v. Parker,* 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983), by stating that "[o]nce the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied. At that point, class members may choose to file their own suits or intervene as plaintiffs in the pending action." *Id.* 462 U.S. at 354, 103 S.Ct. at 2397.

**2.** It is not disputed that the four plaintiffs herein were members of the putative class in *Lane.*

**1316**

The Court reiterated in *Crown, Cork & Seal v. Parker* that because the defendant there had notice of the substantive claims and generic identities of the potential class plaintiffs due to the filing of the class action suit, "[t]olling the statute of limitations thus creates no potential for unfair surprise, regardless of the method the class members choose to enforce their rights upon denial of class certification." *Id.*

Two considerations set out in *American Pipe* and its progeny provide the analytical framework within which to determine whether the statute of limitations is tolled in this case. The first consideration is "aimed at protecting ... the vitality of the class action suit from a needless 'multiplicity of activity' [in the form of protective lawsuits].... [The second consideration focuses on] the integrity of the notice requirement underlying any statute of limitations." *Comment, Class Actions and Statutes of Limitation,* 48 *U. of Chi.L. Rev.* 106, 109 (1981).

The plaintiffs herein have chosen two routes to protect their rights. They first intervened in *Lane* to appeal the denial of class certification. As intervenors, they stepped into the shoes of the *Lane* class representatives, who did not participate in the appeal. The plaintiffs herein were unsuccessful in their appeal, the Fourth Circuit having affirmed in June, 1984, this court's denial of class certification in *Lane.*

■ The defendants argue that the pendency of the appeal would toll the statute of limitations only if the plaintiffs were successful on appeal. That argument has no merit. Acceptance of defendants' argument would lead to a multiplicity of individual suits filed for protective purposes after the appeal was taken but before a decision were rendered by the Court of Appeals. *American Pipe* sought to prevent such a situation. *See* 414 U.S. at 551–53, 94 S.Ct. at 765–66; *see also Jimenez v. Weinberger,* 523 F.2d 689 at 696 (7th Cir.1975), *cert. denied,* 427 U.S. 912, 96 S.Ct. 3200, 49 L.Ed.2d 1204 (1976) (if the district court refused to certify the class "we think the tolling would have continued if the plaintiffs had appealed from such a ruling....").

As a practical matter, the affirmance of *Lane*'s denial of class certification finally disposed of that case. The named plaintiffs in that action long ago settled their claims against the defendants and judgment was entered against them in this court. Although the plaintiffs herein sought leave to intervene in *Lane* to pursue their claims individually, this court denied that request and the Fourth Circuit affirmed the denial. *Adams v. Bethlehem Steel,* 736 F.2d at 995.

Failure on appeal to have the class certified or to be given leave to intervene individually in *Lane* required these unsuccessful plaintiffs to initiate a separate lawsuit and to seek the application of *American Pipe* tolling provisions in the newly instituted suit. In fact, in *Crown, Cork & Seal v. Parker,* the Court stated that once class certification is denied, class members "may choose to file their own suits or to intervene as plaintiffs in the pending action." 462 U.S. at 354, 103 S.Ct. at 2397. Because there is no "pending action" in which these plaintiffs could intervene, their only choice was to file a new action.

The plaintiffs, by filing the instant action in 1982, opened a second route to protect their rights—the filing of a "new action." It is a class action containing their individual and representative claims of racial discrimination.

*Crown, Cork & Seal* clearly established that the statute of limitations remained tolled for all members of the putative class until class certification was denied. 462 U.S. at 354, 103 S.Ct. at 2397. The defendants argue that the tolling principle is not applicable in the instant action because *Lane* did not provide fair notice of the instant plaintiffs' claims to the defendants.

■ To invoke *American Pipe* tolling, the prior class action pleadings must provide the defendants "with 'the essential information necessary to determine both the subject matter and size of the prospec-

tive litigation....'" *United Airlines, Inc. v. McDonald,* 432 U.S. 385, 392–93, 97 S.Ct. 2464, 2468–69, 53 L.Ed.2d 423 (1977) *quoting American Pipe,* 414 U.S. at 555, 94 S.Ct. at 767.

According to one commentator,

"The notice issue may take two forms. In the first, the defendant would assert that the class claim was incomprehensibly vague. He may have received notice of the named plaintiff's claims within the statutory period, while having absolutely no idea what sort of class he was opposing. The defendant would thus claim that he was unable to determine 'both the subject matter and size of the prospective litigation' within the statutory period, and accordingly did not receive notice adequate to justify tolling the statute of limitations for any asserted class members. This problem could arise if the named plaintiff made a vague allegation of injury, and then claimed to sue on behalf of himself and all others similarly situated....

The second notice problem would involve only some class members. The complaint may assert a specific class, but some class members subsequently may be revealed to have distinguishing characteristics that would substantially affect the defendant's case. The defendant thus would assert that he had been surprised by claims he was not prepared to defend against."

*Comment, supra,* at 113–14 (footnote omitted).

The defendants herein argue that the original class action claims in *Lane* were so vague that they provided little or no notice of the individual claims brought in the case at bar. This court's general observations regarding the *Lane* class action support that argument.

In denying class certification in *Lane,* this court stated:

"First, although the complaint in this case has been twice amended to add parties and claims (Paper Nos. 1, 14 and 38), the plaintiffs have yet to set out in the complaint a statement of their individual claims of discrimination. Instead, the plaintiffs have simply 'laundry listed' virtually every conceivable type of discriminatory employment practice. Although the rules of pleading are to be applied liberally, a party moving for class certification must do more than allege general categories of employment discrimination. *See* Rule 8(a)(2), Fed.R.Civ.P.; 3B *Moore's Federal Practice* ¶ 23.02–2 (2d ed. 1980). *Cf. Belcher v. Bassett Furniture Industries, Inc.,* 588 F.2d 904, 906 (4th Cir.1978).

Second, while it is true that a motion for class certification should not be determined solely upon the pleadings, and that the court should consider the moving party's legal memoranda and discovery materials, *see King v. Gulf Oil Co.,* 581 F.2d 1184, 1186 (5th Cir.1978), the plaintiffs' memorandum relating to the scope and composition of the proposed classes (Paper No. 182), does not indicate what claims the named plaintiffs intend to raise on their own behalf under either Title VII or section 1981. Consequently, there is no basis for determining the propriety of the proposed classes and class claims. Simply referring to the named plaintiffs' EEOC charge and deposition testimony without specifying how these documents, and the information contained therein, relate to any substantive theories of discrimination, as the plaintiffs have done here, cannot substitute for the precise analysis contemplated by Rule 23(a). Significantly, most of the deposition testimony referred to by the plaintiffs concerns matters well beyond the reach of the applicable statutes of limitations. Moreover, the EEOC charges and the referred to deposition testimony are generally unrelated to, and do not provide self-evident support for, the broad claims suggested by the plaintiffs for class treatment.

Third, although the record in this case does contain a substantial amount of statistical data that could conceivably be relevant to the class certification issue, the plaintiffs have made no attempt to

relate any of this material, except in the most general way, to their class certification motion. Specifically, the plaintiffs have not stated how and why the statistical data would support theories of discrimination on a class wide basis, and they have not explained its significance in terms of numerosity. In sum, the plaintiffs have not made even a minimal showing, with respect to the Rule 23(a) criteria, in support of their fifteen proposed classes."

*Lane v. Bethlehem Steel,* slip op. at 5–7 (Paper No. 17, Ex. E).

When the Fourth Circuit upheld the denial of class certification in *Lane,* it characterized the *Lane* complaint as one "alleging in very broad language, thirty-seven general practices in which the defendants allegedly discriminated against black employees and applicants for employment. There were no allegations identifying the injuries allegedly suffered by the named plaintiffs, or any of them." *Adams v. Bethlehem Steel,* 736 F.2d at 994. Even after several amendments to the complaint the *Lane* plaintiffs "made no attempt to specify the harm allegedly suffered by any of the named plaintiffs by reason of the general practices of which they complained." *Id.*

When a court analyzes the notice issue to determine whether *American Pipe* tolling principles should apply to a new action alleging individual claims, "the appropriate focus of inquiry should be upon the extent and character of the notice of the later individual claims which the defendant actually received from the class action." *Rose v. Arkansas Valley Environmental & Utility Authority,* 562 F.Supp. 1180, 1193 (W.D.Mo.1983).

In *Lane,* the present defendants received notice only of a generalized laundry list of "virtually every conceivable type of discriminatory practice." *Lane v. Bethlehem Steel,* slip op. at 6. In effect, the defendants had notice only of the fact that they were being charged with racial discrimination in any and all types of general employment practices.

As to the character of the notice received, the named plaintiffs in *Lane* did "not indicate what claims [they] intend[ed] to raise on their own behalf under either Title VII or section 1981." *Id.*

It is the named plaintiffs' claims which define the parameters of the class claims. *See, e.g., General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 149, 102 S.Ct. 2364, 2366, 72 L.Ed.2d 740 (1982); *General Telephone Co. v. EEOC,* 446 U.S. 318, 330, 100 S.Ct. 1698, 1706, 64 L.Ed.2d 319 (1980) (discussing the typicality requirement).

As this court pointed out in *Lane,* "it is essential [for class action purposes] 'to identify the character or type (*but not the merits*) of each plaintiff's claim.' Such an identification is necessary because central to both disparate impact and disparate treatment theories of liability, where class wide race discrimination is alleged, 'is the existence of an identifiable employment pattern, practice, or policy that demonstrably affects all members of a class in substantially, if not completely, comparable ways.' If such a pattern, practice or policy cannot be shown, then the named plaintiffs' individual claims are inappropriate for class treatment; they would involve either uniquely personal claims, or an event or series of events not predicated upon a company wide employment practice." *Id.* at 3 (citations omitted) (emphasis in original).

Because *American Pipe* requires the defendants to have had notice of the substantive claims against them in order for the tolling doctrine to be applicable, the claims of the named representatives of the putative class, whose suit is relied upon to toll the statute of limitations, must have been alleged sufficiently clearly to establish the specific parameters, at least arguably, of the class claims. If the named plaintiffs do not indicate what claims they intend to raise individually, there is no notice to defendants as to the substantive nature of the claims made on behalf of the individual members of the class. *General Telephone Co. of Southwest v. Falcon, supra.* It follows in such a case that, if a putative class action is refused certification on the

basis that the individual claims of the purported class representatives are insufficiently stated to determine what the class claims are, the defendants have no notice from the filing of that putative class actions of the type of claims which individual members of the rejected class might make after the putative class is refused certification.

This court concludes that a previous class action which puts the defendants on notice that many persons have a generalized grievance of racial discrimination against them does not give the defendants the fair notice which is the foundation of the tolling doctrine announced in *American Pipe*. Thus when the named plaintiffs in a class action do not specify the harm they have suffered, the putative class members cannot rely on *American Pipe* tolling principles to protect their individual claims from a statute of limitations defense.

The facts and procedural history of the present case present the rare situation[3] in which a previous class action suit did not provide notice to the defendants of the substantive claims being brought against them. But if the notice requirement of *American Pipe* is to have any effective application, it must be applied when class representatives make no specific allegations of injury. Denying *American Pipe* tolling provision protection in such a case reflects " '[t]he theory that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them.' " *American Pipe*, 414 U.S. at 554, 94 S.Ct. at 766 citing *Order of Railroad Telegraphers v. Railway Express Agency*, 321 U.S. 342, 348–49, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944).

Therefore, without the aid of *American Pipe* tolling, the plaintiffs' claims here must have been filed within the relevant limitations periods for Title VII and § 1981.

**B) Are the individual claims in the instant action barred by the statute of limitations?**

*1) Title VII Claim*

Under Title VII "a charge . . . shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred . . . except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a state or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e). Because the State of Maryland, through the Maryland Commission on Human Rights, provides a state agency capable of providing relief from discrimination, Maryland is a Title VII deferral state. *Vanguard Justice Society, Inc. v. Hughes*, 471 F.Supp. 670, 680 n. 26 (D.Md.1979).

As this court explained in *Soble v. University of Maryland*, 572 F.Supp. 1509, 1514 (D.Md.1983), Title VII requires that the charge with the EEOC may not be instituted until 60 days after commencing the state proceedings.[4] "Thus with the Act's filing deadlines, a grievant must file with a state agency within 240 days of the alleged discriminatory act."[5] *Id.*

Although it is unclear from the papers and pleadings on file in this case whether the plaintiffs ever filed charges with the

---

**3.** The successful assertion that the original class claims were so vague as to provide no notice "will be rare, however." *Comment, supra,* at 113.

**4.** *See* 42 U.S.C. 2000e–5(c).

**5.** In *Soble,* this court held that claimants who filed EEOC charges prior to June 23, 1980 were

"entitled to the 300 day rather than the 240 day extended period for filing with the EEOC." 572 F.Supp. at 1514. The EEOC charges herein were filed in January and February, 1982 (Paper No. 17, Ex. F). Therefore, the 240 day filing requirement, not the 300 day filing requirement, applies to these plaintiffs.

**1320**

Maryland Commission on Human Rights, for the purposes of this motion this court will assume that such filing occurred. Therefore, if the plaintiffs filed charges with the EEOC on or before the 240th day after the alleged employment discrimination occurred, their charges were timely filed.

■ A review of the EEOC charges filed by the plaintiffs herein reveals that two time periods of discrimination are alleged. The first time period runs from each plaintiff's date of employment to 1973–74. Within that period of time, each claimant alleges that Bethlehem Steel directly discriminated against him (Paper No. 17, Ex. F). Clearly, charges filed in 1982 for direct discrimination ending in 1974 are not timely.

■ The second time period runs from "1973–74 to date." During that time each plaintiff alleges that he was "indirectly aggrieved" by the past discriminatory practices of Bethlehem Steel, particularly in the promotion area. Each plaintiff alleges that but for those past practices he would be "much further advanced at Bethlehem Steel than [he] currently [is] and would have a higher paying job." (*Id.*)

As to the second time period, the plaintiffs assert that Bethlehem Steel "*intentionally* continu[ed] the effects of its old policies 'via the indirect expedient' of not promoting its black employees to supervisory and management positions, and by not promoting them to its craft-oriented positions, etc." (Paper No. 21 at 5) (emphasis in original). Therefore, the plaintiffs argue that Bethlehem Steel's conduct constituted continuing violations of Title VII which would toll the running of the statute of limitations.

In *Soble*, this court examined the recent decisions of the Fourth Circuit and the Supreme Court discussing the continuing violations theory and concluded that the teachings of those cases required district courts to examine "the facts of each case to determine whether a continuing policy of discrimination is allegedly practiced or

whether the situation involves only a series of discrete decisions." 572 F.Supp. at 1515. To escape the bar of statutes of limitation, the plaintiffs must allege, and ultimately prove, that Bethlehem Steel engaged in a plan or practice of discrimination which continued substantially up to the time they filed their EEOC charges. *See, e.g., id.* at 1516; *Small v. Bethlehem Steel Corp.*, No. M–82–1825 (D.Md. Jan. 10, 1983).

> Each plaintiff stated in his EEOC charge:
> "I believe that I and Blacks as a Class, have been continuously discriminated against, for the following reasons:
> The effects of the pre 1973–74 discrimination against Black employees has an on-going and continuing effect against all Black employees in my situation, including myself and is otherwise continuing both in effect and directly, but to a lesser extent than previously against such Black employees and myself to this date."

(Paper No. 17, Ex. F). That assertion, as this court sees it, alleges only that the pre 1973–74 discriminatory acts of Bethlehem Steel continue to affect the plaintiffs. It seems that the plaintiffs are not alleging a continuing plan or practice of discrimination, but only that Bethlehem Steel's prior discriminatory practice negatively affects them today.

■ The critical question "in every discrimination case, whether there is a charge of 'continuing violation' or not, is 'whether any present *violation* exists' and not 'mere continuity'...." *Hill v. AT & T Technologies, Inc.*, 731 F.2d 175, 180 (4th Cir.1984). A "present violation" is one occurring within the requisite number of days, *i.e.* 180, 240, or 300 days, of the filing of a charge alleging a violation of Title VII. *Id.*

The plaintiffs herein have not alleged present violations. They have alleged past violations with present effects. "[T]he proper focus [when computing limitations] is on the time of the discriminatory act, not the point at which the consequences of the act became painful." *Chardon v. Fernandez*, 454 U.S. 6, 8, 102 S.Ct. 28, 29, 70

L.Ed.2d 6 (1981). *See also Price v. Litton Business Systems, Inc.,* 694 F.2d 963, 965 (4th Cir.1982).

The discriminatory acts in this case occurred prior to 1974.[6] In *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), the Court recognized that the airlines had engaged in a discriminatory practice in the past and that that past act of discrimination had present effect—*i.e.,* "a continuing impact on [the plaintiff's] pay and fringe benefits." *Id.* at 558, 97 S.Ct. at 1889. The Court, nevertheless, concluded that the plaintiff's claim was time-barred emphasizing that "mere continuity" does not a continuing violation make. *Id.* "A discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed.... [I]t is merely an unfortunate event in history which has no present legal consequences." *Id.*

This Circuit has held that *Evans* precludes a "continuing effects" interpretation of the continuing violations theory. *See Simmons v. South Carolina State Ports Authority,* 694 F.2d 63, 65 (4th Cir.1982) (affirming lower court holding that failure to challenge timely the alleged unlawful practice precludes a challenge to its derivative effects); *See also Allen v. United States Steel Corp.,* 665 F.2d 689, 693 (5th Cir.1982).

In summary, the plaintiffs' 1982 EEOC charges do not assert actionable violations of Title VII within the relevant time period. Their Title VII claims are time barred.

### 2) *Section 1981 Claims*

Maryland's three year limitations period, *Md. Cts. & Jud.Proc.Code Ann.* § 5–101, applies to section 1981 claims. *Burnett v. Grattan,* —— U.S. ——, ——, 104 S.Ct. 2924, 2926–2929, 82 L.Ed.2d 36 (1984). The litigable scope of section 1981 claims is not limited by an EEOC charge. *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 458–60, 95 S.Ct. 1716, 1719–20, 44 L.Ed.2d 295 (1975). Therefore, this court turns to the allegations in the complaint to determine when the plaintiffs' § 1981 cause of action accrued.

Initially, the court notes that any cause of action based solely on acts occurring prior to November 9, 1979, three years before this complaint was filed, is time barred unless the plaintiffs can show continuing violations. As stated previously, the plaintiffs must allege that a discriminatory act occurred within the limitations period, not merely that the consequences of time barred acts affect them in the present. *See Chardon v. Fernandez,* 454 U.S. at 8, 102 S.Ct. at 29; *Delaware State College v. Ricks,* 449 U.S. 250 at 257, 101 S.Ct. 498 at 503, 66 L.Ed.2d 431 (1980).

Therefore, to the extent that the plaintiffs' § 1981 claims are parallel to their Title VII claims, they must allege a present violation of their rights within three years of filing suit. As to the parallel claims, each plaintiff, except for minor discrepancies in dates of employment and position, allege essentially the same facts. For ex-

---

**6.** The plaintiffs, in their response to the Bethlehem Steel's motion to dismiss, indicate that plaintiff Aiken filed a second EEOC charge on September 2, 1983 (Paper No. 21, Attachment). That charge alleges an ongoing present policy and practice of discrimination against blacks with some specificity. For example, Mr. Aiken states that because of Bethlehem Steel's policy of discrimination in promotion "it is futile to apply for positions that you know you're not going to get because of race." (*Id.*)

The plaintiffs contend that the 1983 EEOC charge "serves as an additional buttress to support the complaint of current (*i.e.,* post 1975 class discrimination), as well as past discrimination (*i.e.,* pre-1975 discrimination)."

Even if the 1983 EEOC charge, which could not have been the basis of the plaintiffs' 1982 complaint, were relevant to this action, it is clear from the face of the charge that no present violations of Title VII were alleged to have occurred within the relevant time period prior to filing suit. The plaintiff states in the charge that "[t]here has been no position available since 1982, that I know of." (Paper No. 21, Attachment). Yet in his charge he complains of discrimination in promotion.

It is difficult to understand how one can be discriminatorily denied promotions during a time when no positions opened up into which a person could be promoted.

ample, plaintiff Leford T. Davis alleges that when he began to work at Bethlehem Steel in 1949 he was assigned to an all black unit. In 1962, he was transferred to a white unit, but was so harassed, he transferred, or was transferred, back to the all black unit two weeks later (Paper No. 1, ¶ 13 & 14). Eventually, he asserts, he gave up applying for better jobs or promotions (Paper No. 1, ¶ 20). Therefore, he alleges, that each and every day, he was discriminated against by the very existence of the discriminatory practices. (Paper No. 1, ¶¶ 21–25).

It is clear from the face of the complaint that the "discriminatory practices" by which he and the other three plaintiffs were aggrieved occurred prior to 1974 (*see* Paper No. 1, ¶¶ 20–24). As such, he is asserting a continuing effects, not a continuing violations, theory. In fact, Mr. Davis, and the three other plaintiffs herein, state in their complaint, "from the initial date of ... employment, or almost immediately concurrent with such dates, each of the named plaintiffs was aware of the discriminatory policies and practices of Bethlehem Steel and the union defendants ... and as black employees each of the named plaintiffs realized the futility of attempting to get out of black units at Bethlehem Steel...."[7] (Paper No. 1, ¶ 20). "Mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." *Delaware State College v. Ricks*, 449 U.S. at 257, 101 S.Ct. at 504.

Therefore, as to the parallel Title VII/§ 1981 claims, no present violation is alleged to have occurred within three years of filing suit. Those § 1981 claims are time barred.

■ The plaintiffs, however, have alleged a cause of action under § 1981 which was not encompassed in their Title VII claims. By amendment, on December 7, 1982, the plaintiffs alleged that they were "subjected by the very existence of ...

[discriminatory] policies to inconvenience, unfairness, depression, isolation from and denial of association with the preferred group, humiliation and a denial of psychological well being. Each plaintiff was additionally intimidated and threatened by the very existence of the aforesaid policies and actions of the defendants, each and every day during the period involved; and were additionally threatened and intimidated by the very existence of the policies and actions involved as to *future* violations of their civil rights by the defendants in this very same regard and were as such personally aggrieved on each and every day of the period in question...." (Paper No. 5, ¶ 21).

■ This court reads those allegations to mean that the plaintiffs have experienced and continue to experience psychological injury because of the defendants' past discriminatory practices. "It may well be that the infliction of psychological injury or deprivation of interracial association is actionable.... [But] the existence of a wrong without an identifiable injury does not provide a basis for redress." *Adams v. Bethlehem Steel*, 736 F.2d at 994 (commenting on the plaintiffs' argument on appeal from *Lane* that the " 'mere existence' of thirty-seven enumerated policies alleged to be discriminatory had an adverse effect upon all black employees....") (citations omitted).

An "identifiable injury" causing the psychological harm must be one that is not time-barred. As stated previously, none of the plaintiffs herein have pointed to an act of discrimination which occurred within three years of their filing suit. In addition, as to plaintiffs Aiken and Smith, no deprivation of interracial association has occurred within the relevant time period. *See* note 7, *supra*. As to plaintiff Bland, he "retired from Bethlehem Steel in 1975" (Paper No. 1, ¶ 17). His cause of action for psychological injury or deprivation of interracial association, if one existed, at the

---

7. The court notes, however, that Mr. Aiken in 1970 "was transferred to a primarily white unit and has remained in this unit until this date

..." (Paper No. 1, ¶ 15) and that Mr. Smith "[i]n 1955 was placed in a racially mixed unit...." (Paper No. 1, ¶ 19).

latest accrued on his date of retirement. Finally, as to plaintiff Davis, his transfer to a white unit in 1962 and the subsequent re-transfer back to an all black unit during that year, gave rise to a cause of action at that time,[8] if at all.

In conclusion, the plaintiffs' § 1981 claims are time barred.

C) If the named putative class representatives' claims are not protected by tolling principles, how does that effect the putative class?

As stated previously, the claims of named class representatives define the parameters of the class. Therefore, at least one member of the *Lane* class must be able to come forward with a "fresh" claim of sufficient specificity to represent the class. But, when in a previous class action, the named plaintiffs have not identified the claims they intend to raise individually, *i.e.*, have not identified the parameters of the class, and when, as a result, the defendants have not received notice of potential subsequent claims, it is logically impossible that there exists a plaintiff from the previous class action who can come forward to represent the class.

An anomaly occurs in such a situation. A class may exist, but it lacks a plaintiff to represent it adequately. Each member of the putative class who is brought forward would face the argument that *Lane* provided the defendants with no notice of the individual's claim.

Therefore, the putative class action brought herein is not protected from a limitations defense by *American Pipe* tolling.

D) If *Lane* does not toll the limitations period on class members claims, what is the status of this class action?

Because *Lane* does not toll the statutes of limitation for this class action, it must be viewed as a new class action, filed in November, 1982. Although, the named class

representatives' claims have been held to be time barred, that does not necessarily effect the viability of the class action. "If the named plaintiff's claim is barred by statute of limitations, a proper plaintiff may be substituted to represent the class." *Dameron v. Sinai Hospital of Baltimore*, 595 F.Supp. 1404 (D.Md.1984) *citing International Woodworkers v. Chesapeake Bay Plywood*, 659 F.2d 1259, 1270 (4th Cir. 1981).

The plaintiffs have not moved for class certification at this time, but in order to avoid continuing and protracted litigation regarding the viability of potential class representatives' claims and the underlying claims of the class, this court will exercise the broad administrative and adjudicative power it possesses to guide the course of this class action suit. *See, e.g., Shelton v. Pargo*, 582 F.2d 1298, 1306 (4th Cir.1978); *Horn v. Associated Wholesale Grocers, Inc.*, 555 F.2d 270, 274 (10th Cir.1977); *Senter v. General Motors Corp.*, 532 F.2d 511, 520 (6th Cir.), *cert. denied*, 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976).

In the usual case, when a court has before it a class certification motion it "generally refuse[s] to consider the impact of such affirmative defenses as the statute of limitations on the potential representative's case." *International Woodworkers v. Chesapeake Bay Plywood*, 659 F.2d 1259 at 1270 (4th Cir.1981). "This view is supported by the principle that the class representative need not show a probability of individual success on the merits...." 1 H. Newburg, *Class Actions*, § 1115(e) at 191 (1977).

The present action is not the usual case. At this juncture, the putative class is unrepresented by a named plaintiff. Serious issues regarding the effect of limitations on *all* class members claims have been raised. Litigation regarding the alleged discriminatory practices of these defendants has spanned almost fifteen years.

---

**8.** It could be argued that it was not until the Supreme Court decided *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972), recognizing a cause of action for denial of interracial association that plaintiff Davis' cause of action accrued. Even if that were the case, his claim brought in 1982 remains time barred.

*See, e.g., Carroll v. United Steelworkers, et al,* 498 F.Supp. 976 (D.Md.), *aff'd,* 639 F.2d 778 (4th Cir.1980) (case instituted in 1975); *Lane v. Bethlehem Steel,* 93 F.R.D. 611 (D.Md.1982), *aff'd sub nom Adams v. Bethlehem Steel,* 736 F.2d 992 (4th Cir. 1984) (instituted in 1971); *Lewis v. Bethlehem Steel,* 440 F.Supp. 949 (D.Md.1977) (instituted in 1970). Given those circumstances, some investigation of the merits of the putative class's claims appears warranted.

The plaintiffs define the class in their complaint,

> "as including the named plaintiffs and all similarly situated black persons who were hourly paid, blue collar employees of Bethlehem Steel, and members of Local Union 2609 or 2610 of the United Steelworkers of America, at any time during the operable period of time involved in this class action, i.e., from September 26, 1967 through the present date for Title VII purposes and from June 4, 1969 until the present date for § 1981 coverage, whether currently retired or not, and who refused settlement of class claims from the defendants in 1976, or who were retired prior to 1976 from Bethlehem Steel and were not tendered such a settlement."

(Paper No. 1, ¶ 7).

As stated previously, the latest date on which the statute of limitations began to run on this action filed in November, 1982, is November, 1979.[9] It appears from the above definition of the class that the class is composed totally of persons whose claims accrued in 1976, when they refused settlement of class claims or were not tendered settlement because they had retired. Because no class members can invoke *American Pipe* tolling, any member of the class, as it has been defined, who comes forward as a named plaintiff likely will be found to be an improper class representative. In essence, all the claims of all the class members appear to be time barred, having accrued in or before 1976.

If, on the other hand, the class contains persons whose claims accrued on or after November, 1979, this court has serious doubt, after reading the complaint, whether a new named plaintiff will be able to state a claim. To do so, the class representative must allege a present violation of his right not to be discriminated against.

As set forth in their complaint, the class members appear to rest their cause of action against Bethlehem Steel on the allegation

> "[t]hat at all times after 1974, or after the cessation of Bethlehem Steel's direct, open-handed pattern and practice of assigning newly hired black workers to all black departments or units, or placing black workers generally in lower paying job classifications, etc., and while Bethlehem Steel in doing so greatly enlarged black employment opportunity in its blue collar field of employment, the company nonetheless *intentionally continued the effect of its old policies of discrimination via the indirect expedient* of not promoting the plaintiffs and their class to supervisory or management positions, and in particular, by not promoting them to its craft-oriented positions on an equal basis with white employees, in violation of 42 U.S.C. § 1981 and § 2000e, *et seq.,* and has done so until this date."

(Paper No. 1, ¶ 9(6)) (emphasis added). Their allegation against the unions is that the unions encouraged the company's discriminatory practices (Paper No. 1, ¶ 10(1)–(5)) and that

> "the union defendants herein by failing to act against the above discriminatory actions of the company, under the circumstances, thereby ratified such discriminatory policies, in violation of 42 U.S.C. § 1981 and of Title VII."

(Paper No. 1, ¶ 10(6)).

The *continuing effects* of past discrimination is not actionable unless a present

**9.** The November, 1979 date is the latest date on which the class members' § 1981 claims accrued.

violation exists. The complaint, on its face, alleges only the continuing effects of past discrimination. As such it leads this court to believe that the continuing violations theory cannot be applied to prevent the barring of any and all class members' claims by limitations.

If, in fact, every member of the putative class herein possesses an apparently, time barred claim which cannot be saved by the continuing violation theory, it would be a waste of judicial time and resources to allow new class representatives to be substituted for the named plaintiffs herein, and to allow the new class representatives to seek certification of the class, only to determine ultimately that the class representatives and the class they seek to represent possess solely stale claims.

■■■■ Class actions are a powerful means to correct discriminatory practices, but "Title VII class actions, like any other class action, may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982). As the Supreme Court "noted in *Coopers & Lybrand v. Livesay,* 437 U.S. 463 [98 S.Ct. 2454, 57 L.Ed.2d 351 (1978)], 'the class determination generally involves considerations that are "enmeshed in the factual and legal issues comprising the plaintiff's cause of action." ' " *Id.* at 160, 102 S.Ct. at 2372.

The statute of limitations issue is enmeshed in the class certification issue in this case.

Therefore, mindful of this court's responsibility to oversee and administer a class action and cognizant of the principles underlying statutes of limitations, this court concludes that absent a showing that a class exists containing sufficient members to pursue "fresh" claims, the defendants' motions for summary judgment on the grounds of statutes of limitation will be granted.

Plaintiffs' counsel is directed to:

1) Identify for the court one or more unnamed class members who will seek leave to be substituted in this action as class representatives.

2) Prepare, with the proposed class representatives, answers to the following questions to be submitted in the form of an affidavit:

   a) Does the class you will seek to represent contain members other than those who refused settlement of their present claims in 1976 or those who retired prior to 1976 who were not offered a settlement?

   b) If so, how many members do you estimate belong to the class?

   c) What individual claims do you seek to bring on your own behalf and on behalf of the class?

Answers to these questions will aid the court in determining whether a class exists and, if so, its parameters.

Accordingly, it is this 3rd day of January, 1985, by the United States District Court for the District of Maryland, ORDERED:

1) That the defendants are granted summary judgment on the named plaintiffs' individual claims of discrimination on the grounds of the applicable statutes of limitation.

2) That a final decision on the defendants' motions for summary judgment on the class claims will be held in abeyance subject to receipt by this court on or before January 30, 1985 of the information requested herein of the class and its counsel.

3) That failure to provide this court with sufficient information to determine the existence of a class and its parameters by January 30, 1985 will lead to the entry of judgment in favor of the defendants herein.

4) That the Clerk shall mail a copy of this Memorandum and Order to counsel for the parties.