**David McCAIN, Plaintiff,**

v.

**WASTE MANAGEMENT, INC., Defendant.**

**No. CIV.A.AW–99–1931.**

United States District Court, D. Maryland.

Sept. 14, 2000.

Iris McCollum Green, Green & Foushee, Washington, DC, for Plaintiff.

Lawrence P. Postol, Seyfarth, Shaw, Fairweather and Geraldson, Washington, DC, for Defendant.

### MEMORANDUM OPINION

WILLIAMS, District Judge.

## I. *Introduction*

Pending before the Court is Defendant's Motion for Summary Judgment [49–1]. The Court previously granted-in-part and denied-in-part Defendant's Motion to Dismiss. No hearing is deemed necessary. *See* Local Rule 105.6. The Court has reviewed the parties' respective briefs and supporting documents. For the reasons that follow, the Court will grant Defendant's Motion.[1]

## II. *Background*

The Plaintiff in this case is David McCain. The Defendant is Waste Management, Inc. Plaintiff worked at the Prince George's County Materials Recovery Facility, which is a recycling center. Plaintiff was employed by the Defendant's company, and its predecessor companies, from July 1993 to approximately April 1996. The Plaintiff, an African–American male, alleges that he was discriminated against on the basis of his race.

Plaintiff has based his claims on numerous allegations of racial discrimination. As a general matter, Plaintiff's claims are based on an alleged failure to promote, allegedly discriminatory scheduling procedures, and other workplace practices. Plaintiff alleges that he was not transferred to the company's payroll which held greater employment benefits in a timely manner. Plaintiff alleges that he did not receive pay raises while a white co-worker, James Marcinko, did. After enrolling at the University of Maryland, Plaintiff main-

---

1. Defendant has simultaneously filed a Motion for Sanctions [50–1], based on discovery violations by the Plaintiff. In light of the Court's decision to grant summary judgment, the Defendant was obviously not prejudiced by the violations, and, accordingly, the Court will deny-as-moot this motion.

tains that his request for tuition reimbursement was denied by his supervisor, Mr. Gregory Grant, questioning whether Plaintiff's Veterans Administration (VA) benefits would cover the tuition. In October 1996, Plaintiff applied for a new Assistant Manager's position in Philadelphia, Pennsylvania. Plaintiff alleges that Mr. Grant interfered with his application by telling the Philadelphia plant manager that Plaintiff was not interested in the position. Plaintiff was eventually turned down for the position. Beginning in 1996, Plaintiff alleges that he was required to work double shifts while Mr. Marcinko was not. Afterwards, Plaintiff complained to Mr. Grant that the long work hours adversely affected his health. Plaintiff alleges that he was, then, permanently transferred to the night shift while Mr. Marcinko was assigned to work the day shift. Plaintiff claims, even after the reassignment, he remained responsible for mechanical problems arising during the day shift. Additionally, Plaintiff alleges that he was required to report to work during the day shift on an occasion when Mr. Marcinko was late in reporting. Plaintiff maintains that Mr. Marcinko was given more favorable treatment in terms of pay raises, working conditions, and advancement opportunities even though Mr. Marcinko spent significant time moonlighting for his own landscaping business during regular business hours. In summary, Plaintiff alleges that the Defendant: (1) delayed in transferring Plaintiff to the corporate payroll; (2) delayed granting him raises; (3) denied him use of a tuition reimbursement program; (4) failed to let him apply for an Assistant to the Plant Manager job at the facility and an Assistant Manager job in Philadelphia; (5) required he work long hours, including the second shift; and (6) allegedly "constructively discharged" him, all in violation of Title VII. Plaintiff also alleges generally that African–Americans did not receive equal treatment, thereby suggesting disparate treatment theories. All of the allegedly discriminatory actions were done by Mr. Gregory Grant, Plant Manager, or Mr. Richard Kattar, Jr., Divi-

sion President, who together initially hired Mr. McCain.

Plaintiff filed this civil action on June 28, 1999. The Court previously granted-in-part and denied-in-part Defendant's Motion to Dismiss. Defendant has now filed a Motion for Summary Judgment. The Court will consider Plaintiff's allegations and the parties' respective motions in light of the applicable legal standards.

### III. *Analysis*

#### A. *Legal Standard*

■ Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment will be granted when no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). While the evidence of the non-movant is to be accorded the greatest weight and all justifiable inferences are drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *Runnebaum v. NationsBank of Md., N.A.,* 123 F.3d 156, 164 (4th Cir.1997) (*citing Anderson,* 477 U.S. at 255, 106 S.Ct. 2505 (1986)). To defeat such a motion, the party opposing summary judgment must present evidence of specific facts from which the finder of fact could reasonably find for him or her. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1). The Fourth Circuit has further charged district courts with an affirmative obligation to prevent factually unsupported claims from proceeding to trial. *See Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th

Cir.1987); *Drewitt v. Pratt*, 999 F.2d 774 (4th Cir.1993).

## B. *Procedural Bars To Plaintiff's Claims*

■ At the outset, the Court finds that many of the Plaintiff's claims are barred on procedural grounds. First, the Court believes that Plaintiff did not comply with the time limitations requirement that EEOC discrimination charges must be filed within 300 days of a discriminatory act. *See* 42 U.S.C.A. § 2000e–5(e)(1). Plaintiff filed an EEOC Charge of Discrimination on October 3, 1996. Thus, any discrimination claims based on conduct or acts before November 30, 1995 would be time-barred. The only way in which Plaintiff could assert claims based on acts prior to that date is if he could make out a "continuing violation." However, the Fourth Circuit has made clear that invoking "continuing violation" is not "a talismanic or shibboleth term automatically relieving a claimant of any obligation to comply with the statutory time requirement for the filing of a charge with the EEOC under Title VII." *Hill v. AT & T Technologies, Inc.*, 731 F.2d 175, 179–180 (4th Cir.1984). Here, the Plaintiff has not presented evidence sufficient to show a "continuing violation" theory, and in fact his own admissions show that he cannot as a matter of law. Plaintiff has testified that he knew at the time of each alleged discriminatory act that it was based on racial discrimination, including acts dating as far back October 1993. Plaintiff's knowledge of the alleged discrimination ends any continuing violation theory, and limits his claims to those filed after November 30, 1995. *Tinsley v. First Union National Bank*, 155 F.3d 435 (4th Cir. 1998); *Berry v. Board of Supervisors*, 715 F.2d 971, 981 (5th Cir.1983). As a result, Plaintiff's claims based on acts before November 1995 are time-barred.

■ Second, many of Plaintiff's claims do not fall within the scope of his EEOC Charge form. A person seeking to bring suit in federal court must first file an administrative charge with the EEOC, and his claims are limited to those alleged in his EEOC Charge form. *See* 29 U.S.C. § 626(d); *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247–48 (4th Cir.2000). In his EEOC Charge form, Plaintiff alleged only that he was discriminated against on the basis of (1) the change in his work shift, (2) the failure to promote him to the Assistant to the Plant Manager position, and (3) the alleged interference with his application for an Assistant Manager position at another facility. Plaintiff now contends that he was discriminated against by not receiving raises and being denied tuition reimbursement, and that he was "constructively discharged" from work. These latter claims set out different theories of discrimination than those alleged in the EEOC Charge form. As such, Plaintiff has not exhausted his EEOC remedies on those claims prior to bringing suit. *See King v. Seaboard Coast Line Railroad*, 538 F.2d 581, 583 (4th Cir. 1976); *Hicks v. Baltimore Gas & Electric Co.*, 829 F.Supp. 791, 794 (D.Md.1992). While these claims are procedurally barred, the Court will address these allegations along with the other claims.

## C. *Plaintiff's Title VII Race Discrimination Claims*

■ Plaintiff has presented no direct evidence of discriminatory intent. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir.1996). As a consequence, Plaintiff must rely on inferential proof to make out his case under the burden-shifting criteria set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). As a general matter, to make out a *prima facie* case for employment discrimination, the Plaintiff must show that: (1) he is a member of a protected group; (2) he earned satisfactory performance marks, (3) he suffered an adverse employment action; and (4) other similarly situated employees outside his protected class were treated more favor-

ably. *See Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Carter v. Ball,* 33 F.3d 450, 456 (4th Cir.1994), *citing International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977); *Cook v. CSX Transportation Corp.,* 988 F.2d 507, 511 (4th Cir.1993) *citing McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Causey v. Balog,* 162 F.3d 795 (4th Cir.1998). To the extent Plaintiff is asserting a disparate treatment theory for failure to promote, he must show: (1) the plaintiff is a member of a protected group; (2) plaintiff applied for the position; (3) plaintiff was qualified for the position; and (4) plaintiff was rejected for the position under circumstances giving rise to an inference of discrimination. *See McNairn v. Sullivan,* 929 F.2d 974, 977 (4th Cir.1991). If the plaintiff can make out a *prima facie* case on his claims, the burden shifts to the defendant to come forward with a legitimate, nondiscriminatory reason for its actions. *Evans v. Technologies Applications & Serv. Co.,* 80 F.3d 954, 959 (4th Cir.1996). The burden then shifts back to the plaintiff to show that the defendant's proffered reason is a mere pretext, to create an inference of unlawful discrimination. *See O'Connor v. Consolidated Coin Caterers Corp.,* 84 F.3d 718, 719 (4th Cir.1995); *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993). The federal courts do not serve to second guess workplace decisions; thus, the claim cannot be based on mere disagreement with the employment decision. *See DeJarnette v. Corning, Inc.,* 133 F.3d 293, 299 (4th Cir. 1998). Plaintiff must come forward with admissible evidence that is more than self-serving opinions or speculation. *See Causey v. Balog,* 162 F.3d 795, 801 (4th Cir. 1998).

■ Plaintiff also alleges that he was constructively discharged. To advance a claim for "constructive discharge," the plaintiff must establish: (1) the employer deliberately made an effort to force the employee to quit; and (2) that the working conditions were intolerable. *See Munday v. Waste Management of N. Am.,* 126 F.3d 239, 244 (4th Cir.1997). After applying the aforementioned standards, the Court does not believe Plaintiff has presented a genuine dispute on his claims, and no reasonable jury would find for the Plaintiff.

■ The Court will examine Plaintiff's various allegations as a whole. The Court will note at the outset that all of the alleged discriminatory acts were done by Mr. Grant and Mr. Kattar, both of whom hired the Plaintiff in the first place. The Fourth Circuit has held that when the same person hires an employee, and then takes an allegedly negative employment action, there is a "powerful inference" that the alleged action was not motivated by discriminatory animus. *See Evans v. Technologies Applications & Serv. Co.,* 80 F.3d 954, 959 (4th Cir.1996); *Proud v. Stone,* 945 F.2d 796, 798 (4th Cir.1991). Thus, Plaintiff must affirmatively produce evidence to overcome the strong inference that the alleged adverse employment actions were not racially motivated.

Plaintiff's pleadings allege that Defendant: (1) delayed in transferring Plaintiff to the corporate payroll; (2) delayed in approving his pay raises; (3) denied him use of a tuition reimbursement program; (4) denied him the opportunity to compete for an Assistant to the Plant Manager job at the Prince George's facility; (5) interfered with his application as an Assistant Manager at the Philadelphia facility; and (6) required he work long hours, including the second shift; that effectively constituted a "constructive discharge," all in violation of Title VII. Plaintiff also alleges generally that African–Americans did not receive equal treatment, as further evidence of discrimination based on disparate treatment theories.

■ In response, the Defendant presented uncontroverted evidence which directly undermines or supports a legitimate and nondiscriminatory business reason that addresses each of Plaintiff's em-

ployment discrimination allegations. First, Mr. Grant and Mr. Kattar repeatedly tried to transfer the Plaintiff to the corporate payroll, but headquarters would not allow the transfer due to the increased costs. Second, pay freezes, and not Mr. Grant's or Mr. Kattar's unwillingness, caused delays in granting the raises of employees on the corporate payroll. Plaintiff alleges a white employee, James Marcinko, received pay raises during the alleged pay freeze. The undisputed evidence indicates that Mr. Marcinko was not on the corporate payroll subject to the pay freeze, but on another payroll unaffected by the pay freeze. Plaintiff, in his opposing memorandum, does not dispute that other African–Americans on payrolls outside of the corporate payroll received raises during the alleged pay freeze. Additionally, Plaintiff still received three (3) pay raises totaling 15% over the relevant years. Third, as to the tuition reimbursement, Mr. Grant simply questioned the Plaintiff about apparent double-dipping with Plaintiff's VA benefits. Plaintiff admitted that this was an understandable concern. In his opposing memorandum, Plaintiff refers to Mr. Grant's use of the tuition reimbursement plan, but does not present evidence that Mr. Grant held alternative tuition reimbursement benefits similar to Plaintiff's VA benefits.

 Fourth, as for the hiring decisions, even viewing Plaintiff's allegations of Mr. Marcinko's "side business" activities as true, Plaintiff must establish that he met the requisite qualifications for the position at issue. Plaintiff, in his opposing memorandum, does not dispute that holding a bachelor's degree was a requirement for the Assistant to the Plant Manager position. Plaintiff, during the period in question, did not hold a bachelor's degree. Moreover, the person ultimately hired, Mr. Marcinko, did satisfy the requisites for the position in that he held a bachelor's degree. A point not disputed by Plaintiff. The Assistant Plant Manager position at the Philadelphia facility was already filled by an African–American who had experience with the Plant Manager. In other words, a person within Plaintiff's protected class ultimately filled the position, thereby, discounting an inference of racially-based animus in the decision-making.

 Lastly, as for the reassignment to the second shift, Defendant has shown that the transfer was consistent with the requirements of Plaintiff's job as General Foreman. Furthermore, Plaintiff conceded that all workers worked double shifts at times. In addition, the Fourth Circuit has held that a job reassignment is not an adverse employment action where, as here, the Plaintiff failed to forecast evidence that the reassignment had a negative effect on him in terms of employment benefits, job title, or supervisory responsibility. *See Boone v. Goldin,* 178 F.3d 253 (4th Cir.1999). Many of the other decisions would not even constitute an "adverse employment action" because the Fourth Circuit has limited that term to "ultimate employment decisions such as hiring, granting leave, discharging, promoting and compensating." *Page v. Bolger,* 645 F.2d 227, 233 (4th Cir.1981).

 Apparently, each of Defendant's proffered reasons for its actions is legitimate and nondiscriminatory. Accordingly, the burden shifts back to the Plaintiff to show that the proffered reasons were pretextual. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Plaintiff criticizes his employer's decisions and asserts his own personal opinions about his qualifications. However, this Court does not serve as a secondary human resource department. *See Causey v. Balog,* 162 F.3d 795 (4th Cir.1998) (holding "this Court is not in a position to second guess executive hiring decisions that are based on legitimate, non-discriminatory rationales...."); *McNairn v. Sullivan,* 929 F.2d 974, 980 (4th Cir.1991) (quoting 42.U.S.C. § 2000e–2(a)(1)) ("Title VII does not require that employment decisions be impeccable. It only frowns on employment decisions that are based on 'race, color, religion, sex, or national origin....'"). Equally important,

Plaintiff has not presented admissible evidence sufficient to create a genuine dispute that Defendant's proffered reasons for these actions were pretextual. *See Causey v. Balog,* 162 F.3d 795 (4th Cir. 1998); *Cook v. CSX Transportation Corp.,* 988 F.2d 507 (4th Cir.1993). Rather, Plaintiff primarily rests upon allegations and his own prior statements to speculate on Defendant's motivations behind the alleged discrepancies in treatment between himself and Mr. Marcinko. "[A] prima facie case of discrimination ... is not established simply by counting allegations, especially where the principal support ... [is] the prior statements of the alleged victim." *Settle v. Baltimore County,* 34 F.Supp.2d 969 (D.Md.1999). Absent a legally sufficient evidentiary showing of pretext, Defendant is entitled to judgment as a matter of law. *See Evans v. Technologies Applications & Serv. Co.,* 80 F.3d 954, 958–59 (4th Cir.1996) ("While courts must take special care when considering a motion for summary judgment in a discrimination case because motive is often the critical issue, summary judgment disposition remains appropriate if the plaintiff cannot prevail as a matter of law.").

 As for Plaintiff's suggestion of a constructive discharge theory, the Court believes that summary judgment must be granted on this claim as well. Plaintiff has failed to show either of the two required elements: (1) that Defendant deliberately made an effort to force the employee to quit; or (2) that the working conditions were intolerable. *See Munday v. Waste Management of N. Am.,* 126 F.3d 239, 244 (4th Cir.1997). First, Plaintiff has not presented a genuine dispute that the employer's actions were *intended* to force him to quit. *See Martin v. Cavalier Hotel Corp.,* 48 F.3d 1343, 1354 (4th Cir.1995). Second, however unpleasant Plaintiff may have thought his assignments were, the test is "an objective standard of whether a 'reasonable person' in the employee's position would have felt compelled to resign." *Munday v. Waste Management of N. Am.,* 126 F.3d 239, 244 (4th Cir.1997). There is no admissible evidence of intentional racial discrimination. Instead, Plaintiff cites his dissatisfaction with work shifts, the length of hours worked, pay raises, work-related stress, and promotion opportunities. Such common, workplace unpleasantries do not amount to "intolerable working conditions" as defined by the Fourth Circuit. *See Carter v. Ball,* 33 F.3d 450, 459 (4th Cir. 1994) (holding that dissatisfaction with work assignments or unpleasant conditions does not rise to "intolerable working conditions" in Title VII claims).

 Finally, to the extent that Plaintiff is alleging an overriding disparate treatment claim under Title VII, Plaintiff really has not generated any admissible evidence to support this theory. Plaintiff has presented no admissible statistical data, which is often essential with such claims. *See Carter v. Ball,* 33 F.3d 450, 456 (4th Cir.1994). Plaintiff himself received raises totaling 15%, while the average raise for the facility was 3%. In fact, Defendant has shown that, during the relevant time period, the Plaintiff was actually being paid more than all other employees at the facility except for his supervisor. Plaintiff also makes the bald allegation, unsupported by any admissible evidence, that other African–American employees were denied pay raises during the time he worked at the facility. However, again, Defendant has presented uncontroverted evidence showing that several African–Americans, and other minorities, received comparable raises to non-minorities throughout the allegedly discriminatory period. In short, the Plaintiff has failed to show a genuine dispute that the Defendant treated he and other African–American employees less favorably than non-minorities. *See Carter,* 33 F.3d at 456 (4th Cir. 1994), *citing International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977).

## IV. *Conclusion*

For the reasons stated above, the Court will grant the Defendant's motion. The

Court will issue an Order consistent with this Memorandum Opinion.

### *ORDER*

For the reasons stated in the accompanying Memorandum Opinion, IT IS this _____ day of September 2000 by the United States District Court for the District of Maryland, **ORDERED**:

1. That Defendant's Motion for Summary Judgment [49–1] BE, and the same hereby IS, **GRANTED**;

2. That Defendant's Motion for Sanctions [50–1] BE, and the same hereby IS, **DENIED–AS–MOOT**;

2. That the Clerk of Court **CLOSE** this case;

3. That the Clerk of Court mail copies of this Memorandum Opinion and Order to all parties of record.