**Meenakshi VENUGOPAL, Plaintiff,**

v.

**SHIRE LABORATORIES, Defendant.**

**No. CIV.A. AW–02–3534.**

United States District Court, D. Maryland, Southern Division.

Aug. 26, 2004.

Steven W. Ray, Esq., Edward Lee Isler, Esq., and Jeffrey L. Rhodes, Esq., Vienna, VA, for Defendant.

## MEMORANDUM OPINION

WILLIAMS, District Judge.

Plaintiff Meenakshi Venugopal ("Plaintiff" or "Venugopal") filed suit against Defendant Shire Laboratories ("Defendant" or "Shire") alleging that Defendant's failure to promote her was motivated by national origin animus in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Montgomery County Human Rights Law, Chapter 27 of the Montgomery County Code. Plaintiff also claimed that she was constructively discharged in violation of Title VII. Presently before this Court is Defendant's Motion for Summary Judgment [28]. The motion has been fully briefed and is ripe for resolution. No hearing is deemed necessary. *See* D. Md. R. 105.6. Upon consideration of the arguments made in favor of, and in opposition to, the motion, the Court makes the following determinations.

## I. Background

The following facts are uncontroverted. Defendant Shire, located in Rockville, Maryland, is an advanced drug delivery company specializing in developing oral medications. In the process of developing oral medications, Shire conducts cell-based screening of prototype formulations—a process that tests the amount of an Active Pharmaceutical Ingredient ("API") in a compound that will be absorbed through the human gastro-intestinal wall (hereinafter, "Cell-based Assays"). Cell-based Assays are used to develop different models for oral drug delivery, to study barriers to oral absorption of a drug and to determine ways to increase "bioavailability" of the drug (e.g., how quickly and efficiently the drug is absorbed into the blood and to its ultimate destination in the body). Cell-based Assays primarily involve the application of scientific knowledge and skill belonging to the discipline of biological sciences.

Shire also performs additional physiochemical tests (hereinafter, "Preformulation Assays") to determine the stability, solubility, and compatibility of the API when mixed with other chemicals, in order to bind the API with those non-active ingredients to create a tablet or capsule. Accordingly, Preformulation Assays primarily involve the application of scientific knowledge and skill belonging to the discipline of chemistry.

Prior to Plaintiff's employment, Cell-based Assays were conducted by Shire's Biological Sciences Department. As part of a company reorganization in 1999, Shire restructured the Biological Sciences Department and renamed it the Department of Preformulation Sciences, placing it within the Division of Pharmaceutical Development. That division was directed by Beth Burnside, Ph.D. In preparation for the departure of the former director of Biological Sciences, Dr. Burnside sought a candidate to fill that position.

In or about January 1999, Dr. Venugopal applied for the position of Manager of Preformulation Sciences. She was extended an offer in February 1999, after interviewing with Dr. Burnside and Richard Couch, Ph.D., Senior Vice President of Pharmaceutical Sciences at Shire. She commenced her employment in March 1999. Plaintiff has a Bachelor's degree in Chemistry, a Masters degree in Biochemistry and a Ph.D. in Cellular and Molecular biology. Furthermore, after earning her Ph.D., Plaintiff completed a two and one-half year (2 ½) post-doctoral fellowship at the National Cancer Institute, where her work included the development of drug formulations for the market. In addition, prior to her employment with Shire, Plaintiff had four (4) years of industry experience with two major pharmaceutical companies in India.

As Manager of Preformulation Sciences, Plaintiff's initial duties included supervising three scientists in conducting Cell-based Assays, reporting the results of Cell-based Assays, maintaining current knowledge of literature on increasing the absorption into the bloodstream of peptide drugs, maintaining radiation safety, and communicating the progress of her projects to Dr. Burnside. Plaintiff's annual performance evaluations recognized her strong performance with regard to several of her job duties. The evaluations contain a significant amount of praise and high ratings for her job performance. Indeed, in 2001, Plaintiff received Shire's coveted "Technology Achievement Award." The evaluations, however, also discussed ways in which Plaintiff's could improve her job performance. For example, they suggested that Plaintiff be more assertive at group meetings, form stronger relationships with senior management, take the initiative to set up project reviews of data, and brainstorm with other departments.

Plaintiff received several raises in compensation between 1999 and 2002. Her initial salary in March 1999 was $60,000. She received a raise of $2,500 in 1999, increasing her salary to $62,500. Plaintiff received two additional raises totaling $12,500 in 2000, increasing her salary to $75,000. Finally, in 2001, she received two raises totaling $11,000, increasing her salary to $86,000. In total, Plaintiff received $26,000 in raises during her three years of employment at Shire. In December, 2001 Plaintiff also received an "in-line" promotion to Assistant Director of Preformulation Sciences that resulted in an increase in compensation and change in title, but did not increase Plaintiff's job responsibilities.

For several months in 2000, Dr. Burnside transferred additional responsibility for conducting Preformulation Assays· to the Preformulation Sciences Department. Prior to that time, that department had only conducted Cell-based Assays. The Takeda Project—in which Shire was engaged to develop an oral formulation for a promising HIV drug—was one of the projects conducted by the Preformulation Sciences Department. The Takeda team, under Dr. Venugopal's leadership, encountered some difficulties in conducting the Preformulation Assays. The extent of these difficulties and their effect on Takeda's subsequent decision to discontinue Shire's work are debated by both Plaintiff and Defendant. Shire eventually transferred responsibility for performing Preformulation Assays out of the Preformulation Sciences Department and into the Pharmaceutical Analysis Department.

In December 2000, Shire began advertising the position of head of Preformulation Sciences under the titles of Director, Assistant Director and/or Associate Director of Preformulation Sciences. Shire intended to bring the Preformulation Assays work back into the Preformulation Sciences Department. From October 2000 to January 2002, Defendant interviewed five (5) candidates for the advertised position. The hiring committee consisted of Dr. Burnside, Dr. Couch, Jeffrey Hurdle (Manager of Human Resources), Dr. Venugopal, and several other individuals within Plaintiff's department. The interviewed applicants were Guprit Singh, Ph.D. (Indian national origin), O. Helen Chan, Ph.D. (Chinese national origin), Anthony C. Chao, Ph.D. (Chinese national origin), Robert J. Polzer (American national origin), and Mark Ginski, Ph.D. (American national origin). Dr. Chan, who had a Ph.D. in Pharmaceutics, and Dr. Polzer, who had a Ph.D. in Medicinal Chemistry were both offered the position, but declined. In January 2002, Shire offered Dr. Ginski the position; he accepted.

At the time of his application—November 30, 2001—Dr. Ginski was a senior scientist at Guilford Pharmaceuticals. He had a B.S. in Biological Sciences from the University of Maryland at Baltimore County ("UMBC"), and a Ph.D. in Pharmaceuticals from the UMBC School of Pharmacy. He had just under three years of post Ph.D. relevant experience.

Defendant interviewed Dr. Ginski on January 16, 2002. Prior to the interview, Dr. Burnside indicated to Plaintiff that Shire was interviewing Dr. Ginski for a "peer" position. The following day, Plaintiff learned that Dr. Ginski was being considered for the Associate Director Position. Plaintiff then inquired whether she could apply for the position, and was informed that she could apply. On January 18, 2002, Dr. Venugopal submitted her application. Shire had decided to offer the position to Dr. Ginski—although no formal offer had been made—prior to its receipt of Plaintiff's application. The parties dispute whether Shire considered Plaintiff for the job upon receiving the application or at any previous time.

On January 30, 2002, Shire sent a written offer to Dr. Ginski, and he accepted the position on February 3, 2002. Subsequently, Shire transferred back to the Preformulation Sciences Department responsibility for conducting Preformulation Assays.

Following Shire's decision to hire Dr. Ginski, Dr. Venogupal complained to Mr. Hurdle that she believed she had been discriminated against. On April 29, 2002, Plaintiff took a thirty-day medical leave of absence to seek treatment for emotional/mental health issues. On May 14, 2002, Plaintiff submitted her letter of resignation to Shire effective May 28, 2002. Dr. Burnside resigned her position on August 16, 2002; she was replaced by Padmanabh Bhatt, Ph.D., a person of Indian national origin.

Additional facts will be added throughout the analysis.

## II. Standard of Review

■ Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment will be granted when no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Haavistola v. Community Fire Co. of Rising Sun, Inc.,* 6 F.3d 211, 214 (4th Cir.1993); *Etefia v. East Baltimore Comm. Corp.,* 2 F.Supp.2d 751, 756 (D.Md.1998). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' " *Celotex v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 1). The court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine,* 501 U.S. 496, 520, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991) (citations omitted). While the evidence of the non-movant is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transportation, Inc.,* 152 F.3d 326, 330–31 (4th Cir.1998); *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985).

■ In responding to a proper motion for summary judgment, the party opposing summary judgment must present evidence of specific facts from which the finder of fact could reasonably find for him or her. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548;

10A Charles Alan Wright et al., Federal Practice and Procedure § 2729.1 (3d.1998). The non-movant must show that she has access to admissible evidence for presentation at trial. *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548. In the absence of contradictory evidence showing a genuine dispute as to a material fact, the moving party is entitled to judgment as a matter of law. *See id.* at 317, 106 S.Ct. 2548 (1986). For the purposes of summary judgment, a genuine dispute exists if a reasonable jury could return a verdict for the non-moving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505 (1986). While the non-moving party must do more than merely raise some doubt as to the existence of a fact, the moving party ultimately bears the burden of demonstrating the absence of all genuine issues of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## III. Analysis

### A. Failure to Promote

■ A plaintiff can establish discriminatory intent under Title VII in two ways: (1) through direct evidence of discriminatory animus, or (2) through the application of the burden-shifting analyses employed in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Plaintiff Venugopal has not provided direct evidence, and, as a result, the Court's analysis will follow the *McDonnell Douglas* scheme. As such, Plaintiff must first establish a *prima facie* case of discrimination, which creates an inference of discrimination. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. Once Plaintiff has demonstrated a *prima facie* case, the burden shifts to Defendant to rebut by providing legitimate nondiscriminatory reasons for the adverse action. *See Williams v. Cerberonics, Inc.,* 871 F.2d 452, 457 (4th Cir.1989) (citing *Ross v. Com-*

*munications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir.1985)). The burden then reverts to the employee to "establish by a preponderance of the evidence that the proffered reasons are pretextual." *Id.* To this end, Plaintiff must prove that "the legitimate reasons offered by the agency were not its true reasons, but were a pretext for discrimination." *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *see also Cerberonics,* 871 F.2d at 456. The federal courts do not serve to second guess workplace decisions; thus, the claim cannot be based on mere disagreement with the employment decision. *See DeJarnette v. Corning, Inc.,* 133 F.3d 293, 298–99 (4th Cir.1998). Plaintiff must come forward with admissible evidence that is more than self-serving opinions or speculation. *See Causey v. Balog,* 162 F.3d 795, 801 (4th Cir.1998).

■ While the *McDonnell Douglas* framework involves a shifting back and forth of the evidentiary burden, Plaintiff, at all times, retains the ultimate burden of persuading the trier of fact that the employer discriminated in violation of Title VII. *See Burdine,* 450 U.S. at 253, 101 S.Ct. 1089 (1981). Nevertheless, "the burden of establishing a prima facie case of disparate treatment is not onerous." *Id.*

### 1. Prima Facie Case

■ In order to establish a *prima facie* case for disparate treatment through failure to promote, Plaintiff must demonstrate by a preponderance of the evidence that: (1) she is a member of a protected class; (2) there was a position for which she applied or sought to apply; (3) she was qualified for the job; and (4) she was rejected under circumstances giving rise to an inference of unlawful discrimination. *Amirmokri v. Baltimore Gas and Elec. Co.,* 60 F.3d 1126, 1129 (4th Cir.1995) (fail-

ure to promote; national origin); *Evans v. Technologies Applications and Serv., Co.,* 80 F.3d 954, 959–60 (4th Cir.1996) (failure to promote; gender); *Carter v. Ball,* 33 F.3d 450, 458 (4th Cir.1994) (failure to promote; race). Defendant has conceded that Plaintiff can satisfy the first three elements, but claims that Plaintiff has not demonstrated that her application for the Associate Director position was rejected under circumstances from which a discriminatory animus can be inferred.

 Establishing a *prima facie* case of discrimination by failure to promote is a "relatively easy test." *Evans,* 80 F.3d at 960. Further, the Fourth Circuit has made clear that, "the fact that the person selected ... was not of foreign origin gives rise to an inference of unlawful discrimination." *Amirmokri,* 60 F.3d at 1130 (citations omitted); *see also Carter,* 33 F.3d at 458 (citing *Patterson v. McLean Credit Union,* 491 U.S. 164, 186–88 189, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989)). With this precedent in mind, this Court concludes that the fact that Dr. Ginski is American-born is sufficient to satisfy the fourth prong of a *prima facie* case of discrimination.

 Defendant has argued that *Amirmokri* and other cases relied upon by Plaintiff are inapposite to the instant case because they involved factual situations which alleged repeated instances of promoting individuals outside of the plaintiffs' protected class. In light of the clear precedent set by the Fourth Circuit and the Supreme Court, these distinctions have little weight. In addition, the Court notes that the Fourth Circuit case upon which Defendant relies predates those cases cited by Plaintiff and this Court.[1] For these reasons, this Court finds that Plaintiff has established a *prima facie* case of disparate treatment.[2]

### 2. Legitimate Non–Discriminatory Reasons

A *prima facie* case having been made, the Court must now determine whether Defendant has provided legitimate non-discriminatory reasons for its decision to hire Dr. Ginski instead of Plaintiff. Defendant contends that Dr. Ginski was more qualified than Venugopal. Defendant argues that Shire utilized three criteria for evaluating candidates for the Associate Director position: (1) professional credentials; (2)

1. In *Holmes v. Bevilacqua,* the Fourth Circuit found that the hiring of a person outside Plaintiff's protected class did not satisfy the fourth prong of the test. 794 F.2d 142, 147 (4th Cir.1986). This Court, however, has previously noted the abrogation of *Holmes* by subsequent cases. *See Obi v. Anne Arundel County,* 142 F.Supp.2d 655, 661 (D.Md.2001) (discussing abrogation of *Holmes* by *Patterson v. McLean Credit* ).

2. Plaintiff has also contended that Dr. Burnside's made comments regarding other employees' or applicants' accents. According to Plaintiff, these negative comments create an inference of discriminatory animus sufficient to sustain a *prima facie* case of discrimination. The Court, however, finds this argument unpersuasive. While this Court have previously recognized that such negative comments about an employee's accent is indica-

tive of discriminatory animus *against that employee,* this Court does not believe that such statements about *other* individuals' accents creates an inference of discriminatory animus. *See EEOC v. Orkin,* 63 F.Supp.2d 684 (D.Md.1999), *aff'd.* Admittedly, the Fourth Circuit has concluded that statements revealing racial attitudes of decision-makers have significant probative value. Nevertheless, Dr. Burnside's remarks about an inability to understand the accents of other employees or job applicants' does not clearly reveal any specific racial attitudes. *See Jamil v. White,* 192 F.Supp.2d 413, 419 (D.Md.2002), *aff'd* 55 Fed.Appx. 658, 2003 WL 257499 (4th Cir. 2003) (concluding that negative comments about accents that did not involve the plaintiff in any way was not competent evidence of the employer's discriminatory animus insofar as plaintiff was concerned).

experience with preformulations in the pharmaceutical industry; and (3) leadership skills and business sense. Based on these criteria, Shire claims that Dr. Ginski was a stronger candidate than Dr. Venugopal.

The relevant differences between Plaintiff and Dr. Ginski's credentials are discussed below.

### a. Professional credentials

Dr. Ginski had approximately three years of experience as Ph.D.-level scientist in the area of Exploratory Pharmaceutics and Discovery Support at Guilford Pharmaceuticals. Dr. Ginski also had nine months of experience leading a Chemistry Manufacturing and Controls Team ("CMC"), and a nine-month internship in formulations development at Alpharma/Barre National, Inc. Further, he had received a Graduate Student of the Year award from the University of Maryland at Baltimore County School of Pharmacy.

Plaintiff received her Ph.D. in Cellular Biology and had approximately three years of post-Ph.D. experience in the Pharmaceutical Sciences at Shire at the time Dr. Ginski applied for the position. Plaintiff had also never completed a project at Shire that entailed as much responsibility as Dr. Ginski possessed while directing a CMC Team at Guilford.

### b. Experience with preformulations in this pharmaceutical industry

Dr. Ginski had significant preformulations experience during his prior employment with Guilford, as well as through his educational achievements. At Guilford, he had managed Preformulation Assays, including intestinal and blood-barrier permeability, *in vitro* toxicity, stability, and physiochemical assays of New Chemical Entities. Dr. Ginski had also coordinated the development, manufacture, and supply of oral formulations (tablets and capsules) for clinical trials. Plaintiff, however, had somewhat limited experience with Preformulation Assays.[3]

### c. Leadership skills and business sense

Shire maintains that, at all times, it sought candidates with "[s]trong technical, interpersonal, communication and leadership skills." Def. Ex. 11. Shire contends that those who interviewed Dr. Ginski found that he was a "dynamic and interactive person," who "exudes leadership skills," and possesses a "business sense." Def. Ex. 3 at 301–02, 326. During his interview, Dr. Ginski also proposed ways to integrate the Preformulations Sciences Department into the rest of the company. Finally, Dr. Ginski had experience supervising six scientists with Ph.D.'s and three scientists with Masters of Science degrees.

Shire contends that Plaintiff did not possess the level of leadership and business sense exhibited by Dr. Ginski. In particular, Shire points out that it had repeatedly expressed concerns about Plaintiff's lack of assertiveness and confidence in large group situations, her need to form stronger relationships with senior management, setting up project reviews of data within her department, and brainstorming with other departments. Dr. Venugopal also possessed less supervisory expertise than Dr. Ginski. She had supervised two scientists with Ph.D.'s and three scientists with Masters of Science degrees. In addition, Shire contends that, in her position, Plaintiff did not have the type of overarching

---

**3.** Defendant maintains that Plaintiff had significant problems with her preformulations work at Shire, particularly with regard to the Takeda project. In response, Plaintiff argues that Defendant has exaggerated any difficulties she experienced and points out that her annual evaluations do not reflect Shire's alleged dissatisfaction with Plaintiff's work.

product development authority that Dr. Ginski had exercised at Guilford.

The Court finds that Shire has presented a legitimate non-discriminatory basis for its decision to hire Dr. Ginski instead of promoting Dr. Venugopal.

### A. Pretext

Defendant's presentation of a legitimate, non-discriminatory reason for its decision not to promote Venugopal shifts the burden to Plaintiff who must establish that the proffered reason is merely pretext for discrimination. "In a failure to promote case, the plaintiff must establish that she was the better qualified candidate for the position sought." *Evans,* 80 F.3d at 960 (citing *Gairola v. Virginia Dept. of Gen. Services,* 753 F.2d 1281, 1287 (4th Cir. 1985)); *Young v. Lehman,* 748 F.2d 194, 197 (4th Cir.1984).

Plaintiff's burden is made more onerous by various circumstances creating strong inferences that Shire's decisions lacked a discriminatory animus. First, the fact that Dr. Burnside is the same person who hired Venugopal creates a "powerful inference" that the failure to promote was not motivated by discriminatory animus. *See Evans,* 80 F.3d at 960 (citing *Proud v. Stone,* 945 F.2d 796, 798 (4th Cir.1991))[4]. Second, prior to interviewing Dr. Ginski, Shire interviewed and offered the position to an applicant of Chinese national origin, O. Helen Chan, Ph.D., who declined the offer. Like Dr. Ginski, Dr. Chan had a Ph.D. in Pharmaceutics and experience in the pharmaceutical industry. Third,

Shire's President and CEO, Jacques Khattar, is not American by birth.[5] These three circumstances make it more difficult for Plaintiff to establish that the legitimate non-discriminatory reason proffered by Shire is pretextual.

Plaintiff argues that Defendant's reason is pretextual based on: (1) Shire's inconsistent reasons for why Plaintiff was not considered for the job, and; (2) Shire's inconsistent statements regarding the positions' requirements.

Plaintiff maintains, that the criteria allegedly relied upon by Defendant are inconsistent with the published criteria listed in the job postings that advertised the Associate Director position. Those advertisements provided the following criteria:

- Ph.D. in Cell Biology or a Biological Sciences and 5+ years of relevant experience, including management experience

- Strong technical interpersonal, communication and leadership skills are essential

- Must have experience will cell lines, small organics, peptides/proteins, and permeability or transport experiments

- Must have experience with analytical techniques such as HPLC, RIA/EIA, florescence and radiation

Pl.Ex. 8. As such, Plaintiff contends that these are the relevant criteria for determining whether Plaintiff was more qualified than Dr. Ginski. Plaintiff further argues that she held the requisite Ph.D. in

---

4. The Court further notes that Plaintiff received several pay increases and an in-line promotion while under Dr. Burnside's supervision. While two of the pay increases were the result of company-wide salary adjustments, the others were based upon merit or Plaintiff's job promotion from Manager to Assistant Director of Preformulation Sciences.

5. In an declaration attached to her opposition to Defendant's motion as Exhibit 7, Plaintiff contends that Dr. Hurdle informed her that Mr. Khattar did not agree with the decision to hire Dr. Ginski, refused to sign Dr. Ginski's offer letter, and had stated that decision would likely force Plaintiff to resign. Pl.Ex. 7. This bald assertion, however, is hearsay, and therefore inadmissible evidence which this Court will not consider.

Cellular and Molecular Biology and over six (6) years of experience[6], while Dr. Ginski held a Ph.D. in a Pharmaceutical Science and had less than three (3) years of experience. Plaintiff directs the Court's attention to the fact that Dr. Ginski recognized that his professional credentials did not match the criteria provided in the job advertisement.[7]

Furthermore, Plaintiff claims that Dr. Burnside gave her inconsistent information regarding the criteria for the Associate Director Position. Plaintiff contends that when she originally expressed interest in the position in December 2000, Dr. Burnside informed her that they were actually seeking a candidate with 15—20 years of experience. Dr. Ginski had only approximately three (3) years of experience. The Court notes, however, that Dr. Chan—who was offered the position, but turned it down—had far less than fifteen (15) years experience as well. As such, it is clear that Shire offered the position to another candidate within Plaintiff's protected class who had fewer than the fifteen (15) years of experience. This fact significantly weakens Plaintiff's contention that the alleged inconsistent criteria are evidence of discrimination.

■■■■ This Court has held that mere claims of inconsistencies in administering an employer's recruitment process cannot establish discrimination or pretext. *See Mackey v. Shalala*, 43 F.Supp.2d 559, 567 (D.Md.1999). In addition, district courts do not act as super-personnel departments, second-guessing employers' business decisions. *See Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 410 (7th Cir.1997) (quotations and ci-

tations omitted). Courts recognize the need for employers to exercise a degree of autonomy in their business decisions. *See EEOC v. Clay Printing Co.*, 955 F.2d 936, 946 (4th Cir.1992); *Pfeifer v. Lever Bros. Co.*, 693 F.Supp. 358, 364 (D.Md.1987), *aff'd without op.* 850 F.2d 689 (4th Cir. 1988). Indeed, federal employment discrimination statutes are "not intended as a vehicle[s] for judicial review of business decisions." *Pfeifer*, 693 F.Supp. at 364. As such, business decisions need not be sound, and they only fall within the purview of Title VII when they are based upon a protected status. *See EEOC v. Flasher Co., Inc.*, 986 F.2d 1312, 1320 (10th Cir.1992) (citation omitted).

■■■■ In addition, Plaintiff's argument that Shire's actions demonstrate a pattern or practice of failing to promote based on national origin discrimination also fails. Indeed, "[t]he mere absence of minority employees in upper-level positions does not suffice to prove a *prima facie* case of discrimination without a comparison to the relevant labor pool." *Carter*, 33 F.3d at 456. Furthermore, this Court has previously held that, "individual plaintiffs do not have a private, non-class cause of action for pattern or practice discrimination under Title VII." *Thomas v. Bet Sound–Stage Restaurant/BrettCo., Inc.*, 61 F.Supp.2d 448, 453 (D.Md.1999). Plaintiff's pattern or practice allegations are insufficient, as a matter of law, to establish an inference of discriminatory animus.

The record before this Court reflects that Shire made a hiring decision based upon its determination that Dr. Ginski possessed the professional and educational

---

6. The Court notes, however, that Plaintiff and Dr. Ginski had comparable years of Ph.D.-level experience in the relevant discipline.

7. In an email to a head-hunter, Andy Misovec, Dr. Ginski expressed his interest in both the

Associate Director and Senior Scientist positions, and pointed out that he met all of the requirements for the former "outside of the years of experience (I have 3 instead of 5 years)." Pl.Ex. 12.

background making him a more attractive candidate for the Association Director position than Dr. Venugopal. Plaintiff has not provided sufficient evidence to demonstrate that this reason is merely pretext for discrimination.

### B. Constructive Discharge

▪▪▪ Since the Court finds that Shire's failure to promote Plaintiff was not discriminatory, Plaintiff's constructive discharge claim must also fail. *See Taylor v. Virginia Union Univ.*, 193 F.3d 219, 238 (4th Cir.1999). Notwithstanding this conclusion, the Court also finds that Plaintiff has failed to provide sufficient evidence to support this claim.

Plaintiff contends that the following facts evidence her constructive discharge. First, Plaintiff asserts that the Human Resources Manager took no action with regard to Plaintiff's complaint that her non-promotion was discriminatory. Second, Plaintiff testified that after hiring Dr. Ginski, Shire removed four employees from Plaintiff's supervision and re-assigned some of her ongoing projects to Dr. Ginski. Plaintiff further argues that after the rejection of her application and the reduction in her responsibilities, there were no further opportunities for her professional growth at Shire. Finally, Plaintiff points out that Defendant has not presented evidence that there was a readily identifiable position in which Plaintiff could be promoted.

▪▪▪ To advance a claim for constructive discharge, Venugopal must show that Shire "deliberately made [her] working conditions intolerable and thereby force[d][her] to quit [her] job." *Bristow v.*

Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir.1985), *cert denied,* 475 U.S. 1082, 106 S.Ct. 1461, 89 L.Ed.2d 718 (1986). Specifically, Plaintiff must prove both the "deliberateness" of Shire's actions and the "intolerability" of her working conditions. *Amirmokri v. Baltimore Gas. and Elec.,* 60 F.3d 1126, 1132 (4th Cir.1995) (citing *Martin v. Cavalier Hotel Corp.,* 48 F.3d 1343, 1353–54 (4th Cir.1995)).[8] After applying this standard, the Court finds that Plaintiff has not presented a genuine dispute on his claims, and no reasonable jury would find for Plaintiff.

First, Plaintiff has provided no evidence that Shire acted with "deliberateness." In other words, this Court finds no evidence that Shire acted with the intent to force Plaintiff to resign. *See McCain v. Waste Management,* 115 F.Supp.2d 568, 576 (D.Md.2000). In fact, as discussed above, prior to the decision not to promote Plaintiff to the Associate Director position, Shire had promoted Plaintiff and awarded her compensation increases during her three years of employment. The fact that Shire chose not to promote Plaintiff, by itself, does not establish that Shire was acting with the intent to compel Plaintiff's resignation.

▪▪▪ Second, Plaintiff's workplace was not intolerable. Determining whether an environment is "intolerable" is "an objective standard of whether a 'reasonable person' in the employee's position would have felt compelled to resign." *Munday v. Waste Management of N. Am.,* 126 F.3d 239, 244 (4th Cir.1997). According to the Fourth Circuit, "[d]enial of a single promotional opportunity is insufficient to cre-

---

8. The Court notes this standard is more stringent than that employed by District Court of the District of Columbia cases cited by Plaintiff. Indeed, in that jurisdiction, courts have held that "deliberateness" is not a required element of constructive discharge. *See Hop-*

*kins v. Price Waterhouse,* 825 F.2d 458, 473 (1987), *rev'd on other grounds,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). The Fourth Circuit, and this Court, however, have made clear that a more stringent test involving intent applies.

ate an intolerable working environment." *Taylor*, 193 F.3d at 237–38. Admittedly, Shire also decreased the number of employees supervised by Plaintiff from seven to four. This change, however, is not sufficient to establish constructive discharge. Indeed, in *Jurgens v. EEOC*, the Fifth Circuit determined that, "a slight decrease in pay coupled with some loss of supervisory responsibilities," in addition to a reduction in supervisory duties from 7–12 subordinates to 3–5 subordinates, did not constitute constructive discharge. 903 F.2d 386, 391–92 (5th Cir.1990).

Accordingly, this Court finds that Plaintiff has not submitted evidence sufficient to prove constructive discharge, and this claim will not survive.[9]

## IV. Conclusion

While Plaintiff has established a *prima facie* case of disparate treatment, she has not provided sufficient evidence that Defendant's proffered legitimate non-discriminatory reason for its actions were mere pretext for discrimination. It follows that Defendant is also entitled to judgment on Plaintiff's constructive discharge claim. Accordingly, this Court will grant Defendant's motion for summary judgment. An Order to this effect will follow.

### ORDER

In accordance with the Memorandum Opinion dated August 26, 2004, and for the reasons stated therein, IT IS, this 26th day of August, 2004, by the United States District Court for the District of Maryland, **ORDERED**:

1. That Defendant's Motion for Summary Judgment [28] BE, and hereby the same IS, **GRANTED**; AND;

2. That the Clerk of the Court **CLOSE** this case; AND;

9. Defendant also argues that Plaintiff lacks standing for pursuing the constructive discharge claim because she failed to raise the

3. That the Clerk of the Court transmit copies of the Memorandum Opinion and Order to all parties of record.

claim with the EEOC. In light of the court's determination, it is unnecessary to explore the validity of this argument.